OPINION OF THE COURT
Joan B. Lobis, J.
Plaintiff Generali-U.S. Branch (Generali) has commenced the present action for a declaratory judgment against its insured. It seeks a declaration that it has no duty under the commercial general liability policy it issued to the insured to defend or indemnify an action for damages against the insured arising out of the lead poisoning of a child on property owned by the insured. Generali has brought the present *1058 motion for summary judgment on the grounds that there was no "occurrence” within the period of time in which it provided insurance and that the "absolute pollution exclusion clause” contained within its policy bars coverage for the claims of the plaintiffs in the underlying action. Defendant General Accident Insurance Company (GAIC) has brought a cross motion for summary judgment for a declaratory judgment that it has no duty to defend or indemnify for the same reasons as plaintiff Generali. Defendant Creel Assets, Inc. (Creel), the owner of the property where the lead paint was allegedly ingested, has brought a cross motion for summary judgment against plaintiff in which it claims that plaintiff is obligated under the policy as a matter of law. Finally, defendant Daniel Diaz, the plaintiff in the underlying action who ingested the paint, has also brought a cross motion for an order permitting limited discovery and staying the motion for summary judgment until the completion of discovery. All of these motions and cross motions are consolidated for disposition. For the reasons stated below, Generali’s motion for summary judgment is denied; GAIC’s motion for summary judgment is granted; Creel’s cross motion as against plaintiff is granted but only with respect to a duty to defend as opposed to a duty to indemnify; and Diaz’s cross motion is denied.
OCCURRENCE DURING POLICY PERIOD
Generali issued a commercial general liability policy to defendant Creel for the premises where defendant Daniel Diaz resided which provided coverage effective October 8, 1988 through April 20, 1989. The policy issued by Generali provides that it applies to bodily injury only if the bodily injury is caused by an occurrence and the bodily injury occurs during the policy period. Occurrence is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions.” After the plaintiff in the underlying action commenced a lawsuit against the landlord Creel based on the ingestion of lead paint in the apartment, Creel requested that Generali defend and indemnify it pursuant to the policy issued by Generali.
Generali argues that it is not required to defend Creel in the underlying action because any injury caused to plaintiff in the underlying action did not occur during the policy period. To support its motion, plaintiff has submitted the affidavit of a doctor indicating that Daniel Diaz’s injuries were incurred *1059 prior to the period of coverage afforded by the Generali policy. However, Diaz has submitted another doctor’s affidavit which opines that Diaz experienced two distinct episodes of lead poisoning, one of which occurred during the period of Generali’s coverage under the policy. Based on the contradictory opinions of the two doctors, this court finds that there are disputed issues of fact as to whether Daniel Diaz was injured during the period covered by the Generali policy. As a result, Generali is obligated to defend Creel in the underlying personal injury action.
Defendant GAIC also argues that it should be granted summary judgment declaring that it has no duty to defend or indemnify because there was no occurrence during the period its policies were in effect. This court agrees with GAIC that Creel and the Diaz defendants have failed as a matter of law to establish that Daniel Diaz sustained bodily injury from lead poisoning during either of the two periods for which GAIC issued policies to Creel. Even if the affidavit of Diaz’s doctor is accepted as true, that affidavit specifically provides that the source of lead exposure to Daniel Diaz was eliminated sometime after February 23, 1989 and before March 22, 1990, prior to the time GAIC’s policies became effective. There is absolutely no evidence or allegation in the doctor’s affidavit that lead conditions existed in the apartment during the period that the GAIC policy was in effect. The only evidence Creel and Diaz submit to support the argument that there were injuries during the GAIC policy period is the complaint and the bill of particulars which state that an occurrence took place between the period of December of 1983 to the present. The mere statement in the bill of particulars and complaint, which was not even supported by Diaz’s own doctor’s testimony, is insufficient to impose on GAIC a duty to defend the underlying personal injury action.
THE POLLUTION EXCLUSION CLAUSE
Generali also argues that it has no duty to defend as a matter of law because the personal injury claim of Daniel Diaz is excluded from coverage pursuant to the absolute pollution exclusion clause contained within the Generali policy. The absolute pollution exclusion clause in the Generali policy states:
"This insurance does not apply to:
"f. (1) 'Bodily injury’ or 'property damage’ arising out of the *1060 actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
"(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.”
The exclusion then states: "Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemical and waste. Waste includes materials to be recycled, reconditioned or reclaimed.”
To "negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in a particular case.” (Continental Cas. Co. v Rapid-American Corp., 80 NY2d 640, 652 [1993].) As will be discussed more extensively below, Generali has failed to meet its burden of establishing that coverage is excluded by the policy’s pollution exclusion.
Some history of the pollution exclusion is germane to an analysis of whether the exclusion applies to the ingestion of lead-based paint. In Continental Cas. Co. v Rapid-American Corp. (177 AD2d 61 [1st Dept 1992], affd 80 NY2d 640 [1993], supra), the First Department interpreted an earlier version of a pollution exclusion clause. The exclusion provided that it applied to: "personal injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste material or other irritants, contaminants or pollutants into or upon land, the atmosphere or any body of water” (at 66). The First Department there held that the pollution exclusion did not apply to claims of bodily injury caused by indirect exposure to asbestos products because the complaints "do not allege environmental pollution * * * but simply bodily injury sustained by an ultimate user of a product” (at 68). The Court of Appeals affirmed, noting that "[t]he terms used in the exclusion to describe the method of pollution — such as 'discharge’ and 'dispersal’ — are terms of art in environmental law used with reference to damage or injury caused by disposal or containment of hazardous waste.” (Supra, at 654.)
In 1986, the absolute pollution exclusion clause was redrafted by the insurance industry. The reference to land, atmosphere, or body of water was removed from the exclusion and in its place was inserted "at or from premises you own, *1061 rent or occupy.” The exclusion in the Generali policy contains the revised language.
In Atlantic Mut. Ins. Co. v McFadden (413 Mass 90, 595 NE2d 762 [1992]), the Massachusetts Supreme Court interpreted the revised absolute pollution exclusion clause. The Supreme Court there held that as a matter of law the exclusion did not bar coverage for claims arising out of lead poisoning of an infant tenant of the policyholder. The court stated: "There simply is no language in the exclusion provision from which to infer that the provision was drafted with a view toward limiting liability for lead paint-related injury. The definition of 'pollutant’ in the policy does not indicate that leaded materials fall within its scope. Rather, the terms used in the pollution exclusion, such as 'discharge’, 'dispersal’, 'release’, and 'escape’, are terms of art in environmental law which generally are used with reference to damage or injury caused by improper disposal or containment of hazardous waste.” (413 Mass, at 92, 595 NE2d, at 764.)
The Nassau County Supreme Court also interpreted the revised pollution exclusion clause in Karroll v Atomergic Chemetals Corp. (index No. 4087/90, Sup Ct, Nassau County, Apr. 3, 1991, affd 194 AD2d 715 [2d Dept 1993]). The issue in that case was whether the absolute pollution exclusion barred coverage for injuries sustained by a plaintiff who had been splashed with sulfuric acid from a broken bottle. The court held that the pollution exclusion was not applicable merely because the injury was caused by a pollutant. According to the court, "to hold that any injury arising from contact with a chemical falls within the pollution clause is contrary to the legislative intent and case law where environmental pollution is a triggering event to the application of the pollution exclusion clause.” The court’s decision was affirmed by the Second Department which held that because the exclusion clause may be reasonably interpreted to apply only to instances of environmental pollution, the trial court did not err in holding that the exclusion did not apply.
This court agrees with the reasoning in the decisions of Atlantic Mut. and Karroll (supra) and therefore holds that the absolute pollution exclusion clause does not bar coverage for the underlying personal injury claim of Daniel Diaz arising out of lead poisoning. The Court of Appeals has held that an insurer cannot negate coverage unless the exclusion is subject to no other reasonable interpretation. (See, Continental Cas. Co. v Rapid-American Corp., supra.) In the present case, there *1062 is a reasonable interpretation of the exclusion other than that it applies to claims based on lead poisoning — that the exclusion clause only applies to claims for injuries based on environmental pollution. (See, e.g., Atlantic Mut. Ins. Co. v McFadden, supra; Karroll v Atomergic Chemetals Corp., supra.) Moreover, there is nothing in the exclusion clause from which it can be inferred that the provision was drafted with a view toward limiting liability for lead paint-related injury. The definition of pollutant in the policy makes no reference to lead, paint, or lead-based paint. Finally, to the extent that Daniel Diaz suffered lead poisoning from eating paint chips, this court is not convinced that his injuries arise out of the discharge, disposal, seepage, migration, release or escape of a pollutant.*
Based on the foregoing, Generali’s motion for summary judgment declaring it has no duty to defend or indemnify is denied. Creel is entitled to summary judgment on its cross claim that Generali has a duty to defend but is not entitled to summary judgment on its claim that Generali has a duty to indemnify as there are disputed issues of fact as to whether the injury occurred during the policy period. Finally, defendant Diaz’s cross motion for discovery is denied as unnecessary since this court has already made a determination that the pollution exclusion does not apply.

 Although the Court of Claims has held that the absolute pollution exclusion bars coverage for claims arising out of lead paint injuries, that decision is not binding on this court. (See, Oates v State of New York, 157 Misc 2d 618 [Ct Cl 1993].)