FIRST DIVISION

September 22, 1997

No. 1-96-0347

consolidated with

No. 1-96-0344

INSURANCE COMPANY OF ILLINOIS,

Plaintiff-Appellee,

v.

KATALINA STRINGFIELD; AMERICAN NATIONAL

BANK & TRUST COMPANY, Under Trust No. 60140; LAWRENCE WILLIS; and GLORIA WILLIS,

Defendants-Appellants.

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Edwin M. Berman,

Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court: 

This consolidated appeal raises an issue of first impression in Illinois: whether the standard pollution exclusion found in general liability policies precludes coverage for personal injuries arising out of a minor's ingestion of lead paint and plaster chips inside his family's apartment.

The undisputed facts follow.  Defendant Lawrence Willis, when he was two years old, lived with his mother, defendant Gloria Willis, in an apartment located at 8141 South Kingston in Chicago, Illinois (the premises).  The apartment is the subject of a trust whereby defendant American National Bank & Trust Company (the Bank) is the legal owner of the premises and defendant Katalina Stringfield is the beneficial owner.  Plaintiff sold Stringfield a general liability insurance policy covering the premises.  The policy was in force from October 2, 1990 through October 2, 1992.  Lawrence Willis and his family were tenants on the premises from approximately June 24, 1989 to June 24, 1991.  

On March 10, 1994, Gloria Willis filed a lawsuit on behalf

of her son against several entities, including Stringfield and

the Bank.  The complaint alleged that Lawrence Willis sustained lead poisoning due to his consumption of lead-based paint and plaster that had chipped, flaked, broken and fallen away from various exposed surfaces of the premises.

On June 17, 1994, plaintiff brought the present action,

seeking a declaratory judgment that it had no duty to defend or

indemnify Stringfield in Gloria Willis' action against her.  Plaintiff included as defendants, Stringfield, the Bank, Lawrence Willis and his mother Gloria Willis, all of whom were parties in the original lawsuit filed by Gloria Willis.  Plaintiff alleged, among other things, in an amended complaint filed on March 30, 1995, that insurance coverage was precluded by the pollution exclusion provision contained in the insurance policy issued to Stringfield.  That provision states, in pertinent part, that the insurance did not apply:

"(1) to bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

(a) at or from premises owned, rented or occupied by the name insured[.]"

The policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed."

On October 4, 1995, plaintiff filed its motion for summary judgment, which was granted by the trial court on December 19, 1995.  On January 17, 1996, Gloria and Lawrence Willis filed their notice of appeal; on January 18, 1996, Stringfield and the Bank filed their notice of appeal.  The appeals were subsequently consolidated.  Our review of the trial court's summary judgment ruling, because it involves an issue of law, is 
de
 
novo
. See, 
e.g.
, 
Busch v. Graphic Color Corp.
, 169 Ill. 2d 325, 333, 662 N.E.2d 397 (1996).

In Illinois, when an insurer relies upon an exclusionary  clause in an insurance policy to deny coverage, the applicability of the clause must be clear and free from doubt because any doubts as to coverage will be resolved in favor of the insured. 
Economy Preferred Insurance Co. v. Grandadam
, 275 Ill. App. 3d 866, 869, 656 N.E.2d 787 (1995).  "If the words in the policy are unambiguous, a court must afford them their plain, ordinary, and popular meaning. [Citation.]  However, if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous [citation] and will be construed in favor of the insured ***."  (Emphasis omitted.) 
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 108-09, 607 N.E.2d 1204 (1992).  The determination of whether certain language is ambiguous rests upon whether it is susceptible to more than one reasonable interpretation. 
Bruder v. Country Mutual Insurance Co.
, 156 Ill. 2d 179, 620 N.E.2d 355 (1993).

We start our analysis by looking at the pivotal term "pollutant."  As noted previously, the policy defines "pollutant" as an "irritant" or "contaminant."  These terms were examined by the seventh circuit in 
Pipefitters Welfare Educational Fund v. Westchester Fire Insurance Co.
, 976 F.2d 1037 (7th Cir. 1992).  There, the court cogently stated:

"The terms 'irritant' and 'contaminant,' when viewed in isolation, are virtually boundless, for 'there is virtually no substance or chemical in existence that would not irritate or damage some person or property.' [Citation.]  Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results." 
Pipefitters
, 976 F.2d at 1043.

It is with the recognition of this concept that we undertake our analysis of the present case.  We will not undertake to view the terms in isolation, but in the context of the facts of the present case.  In other words, we need to determine whether the lead-based paint, under the circumstances of this case, is a "contaminant" or "irritant."  As there is nothing before us to indicate that lead "irritates" or that it is generally considered to be an "irritant," our focus will be on the word "contaminant."

 Courts in other jurisdictions, under varying analyses, have found that the standard pollution exclusion language at issue here does not preclude coverage for injuries arising out of a minor child's ingestion of lead-based paint.  See, 
e.g.
, 
Vance v. Sukup
, 207 Wis. 2d 576, 558 N.W.2d 683 (1996); 
Cepeda v. Varveris
, __ A.D.2d __, 651 N.Y.S.2d 185 (1996); 
GA Insurance Co. v. Naimberg Realty Associates
, __ A.D.2d __, 650 N.Y.S.2d 246 (1996); 
Lefrak Organization, Inc. v. Chubb Custom Insurance Co.
, 942 F. Supp. 949 (S.D.N.Y. 1996); 
Weaver v. Royal Insurance Co.
, 140 N.H. 780, 674 A.2d 975 (1996); 
Sullins v. Allstate Insurance Co.
, 340 Md. 503, 667 A.2d 617 (1995); 
Atlantic Mutual Insurance Co. v. McFadden
, 413 Mass. 90, 595 N.E.2d 762 (1992); 
General Accident Insurance Co. v. Idbar Realty Corp.
, 163 Misc. 2d 809, 622 N.Y.S.2d 417 (N.Y. Sup. Ct. 1994); 
Generali-U.S. Branch v. Caribe Realty Corp.
, 160 Misc. 2d 1056, 612 N.Y.S.2d 296 (N.Y. Sup. Ct. 1994).

In 
Sullins v. Allstate Insurance Co.
, 340 Md. 503, 667 A.2d 617 (1995), the court first determined that, based upon its definition in the dictionary, a reasonably prudent layperson may consider lead to be a "contaminant." 
Sullins
, 340 Md. at 511, 667 A.2d at 620.  The court then went on, however, to discuss the insurance industry's intention in creating the pollution exclusion, noting that the intention was to exclude only environmental pollution.  Thus, the court determined that the language was ambiguous because a reasonable interpretation of the term "pollutant" would exclude lead-based paint, which is "a product used legally and intentionally." 
Sullins
, 340 Md. at 512, 667 A.2d at 623.

Plaintiff here, citing 
Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.
, 166 Ill. 2d 520, 655 N.E.2d 842 (1995), correctly notes that Illinois courts should interpret words in an insurance policy according to their plain, ordinary and popular meanings.  Thus, plaintiff further contends, this court should not craft a limitation on the scope of the exclusion, as did the court in 
Sullins
 when it interpreted the exclusion as applying only to environmental pollution or contamination.  Under either analysis, however, we would conclude that an ambiguity exists and the result of our decision would be the same.

We do not believe the court in 
Sullins
 needed to look beyond the plain, ordinary and popular meaning to recognize that the term "contaminant" is susceptible to more than one reasonable interpretation and thus ambiguous with respect to whether it encompasses lead-based paint.  The 
Sullins
 court, in first determining that a reasonably prudent layperson may consider lead to be a "contaminant," noted that Webster's Dictionary defines "contaminant" as "something that contaminates" and "contaminate" as "to soil, stain, corrupt, or infect by contact or association" or "make inferior or impure by mixture."  
Sullins
, 340 Md. at 511, 667 A.2d at 620, quoting Webster's Third New International Dictionary 491 (1981).  With respect to whether such a definition encompasses the lead in the lead-based paint, a reasonably prudent layperson could conclude, based upon the definition alone, that it does not.  The definition implies that there must be a contemporaneous association between the contaminating substance and the time it corrupts the substance, no matter how toxic, dangerous, or undesirable it might later be determined to be.  Thus, the paint could only have been "contaminated" at the time the lead was added.  We do not believe that a reasonably prudent layperson would understand that lead-based paint was contaminated from its time of creation.  It was also not later contaminated since there was no subsequent corruption by lead, which caused the paint to become contaminated, such as would occur if lead from pipes corrupted a water supply.

In addition to this first definition of "contaminate" discussed by the 
Sullins
 court, a second definition found in Webster's Dictionary reinforces our reasoning.  Webster's Dictionary additionally defines "contaminate" as follows: "2: to render unfit for use by the 
introduction of
 unwholesome or undesirable elements <water contaminated by sewage>." (Emphasis added and omitted.) Websters Third New International Dictionary 491 (1993).

   Thus, we conclude that the plain, ordinary, and popular meaning of "pollutant" leads to the conclusion that a reasonable interpretation is that it does not include the lead that is contained in lead-based paint, nor does it include the lead-based paint that was present on the premises.  A common understanding of a pollutant is a substance that "pollutes" or renders impure a previously unpolluted object, as when chemical wastes leach into a clean water supply.  Here the lead did not pollute the paint: it was purposefully incorporated into the paint from the start.  The paint was intentionally applied to the premises.  At the time, the paint was legal.  It was considered neither impure nor unwanted.  A literal reading of the term as it is used in the exclusionary clause at issue supports the interpretation favored by the defendants.  We hold that, as a matter of law, the standard pollution exclusion found in general liability policies does not preclude coverage for personal injuries arising out of a minor's ingestion of lead.

In 
McFadden
, the Massachusetts Supreme Court came to a similar conclusion using different reasoning.  The court, there, reading the exclusion as a whole, focused upon the terms "discharge," "dispersal," "release" and "escape" and noted that these are "terms of art" in environmental law relating to improper disposal or containment of hazardous waste. 
McFadden
, 413 Mass. 90, 595 N.E.2d 762 (1992).  Citing 
McFadden
, among other similarly decided cases, this court has previously decided that the pollution exclusion in a commercial landlord's general liability policy could reasonably be interpreted as applying only to environmental pollution and thus was ambiguous as to whether it applied to tenants' claims for injuries from carbon monoxide emitted from a building's faulty furnace. 
American States Insurance Co. v. Koloms
, 281 Ill. App. 3d 725, 666 N.E.2d 699 (1996).

We agree with the reasoning of 
McFadden
 and 
Koloms
.  Thus, even if we disregard for the moment our analysis of the terms at issue under the "plain, ordinary and popular meaning" test, there is a reasonable interpretation of the pollution exclusion clause other than that it applies to claims for injuries arising out of the ingestion of lead-based paint - that the clause applies only to claims for injuries arising out of environmental pollution.  Thus, the provision is ambiguous and the ambiguity is resolved in favor of the insured. 

Plaintiff urges this court to ignore the 
Koloms
 decision and argues that the court there improperly grafted the "environmental pollution" limitation onto the exclusion, thus ignoring fundamental Illinois coverage doctrines.  Plaintiff argues that, by its written terms, which is the only language plaintiff asserts this court should consider, the exclusion is not limited to "environmental contamination."  We disagree.  "What at first blush might appear unambiguous in the insurance contract might not be such in the particular factual setting in which the contract was issued." 
Glidden v. Farmers Automobile Insurance Ass'n.
, 57 Ill. 2d 330, 336, 312 N.E.2d 247, 250 (1974).

"A contract is properly found ambiguous 'when the language used is susceptible to more than one meaning [citation] or is obscure in meaning through indefiniteness of expression [citation].' [Citation.]  If the court determines that the contract is ambiguous, parol evidence may be considered by the trier of fact in determining the parties' intent. [Citation.]  A contract is binding and enforceable only if its material terms are definite and certain. [Citation.]" 
Meyer v. Marilyn Miglin, Inc.
, 273 Ill. App. 3d 882, 888-89, 652 N.E.2d 1233, 1238 (1995). Here, we have already determined that at least one of the material terms, "contaminant," was not definite or certain.  Thus, we believe it appropriate to use the "provisional approach" here, which views the language of the document from the perspective of the parties at the time of its execution.  

This court, recognizing the split of authority in Illinois courts on the "provisional approach," nevertheless has acknowledged its soundness because " '[t]he meaning of words cannot be ascertained in a vacuum.' [Citation.]" 
Meyer
, 273 Ill. App. 3d at 889, 652 N.E.2d at 1238; see also 
Dungey v. Haines & Britton, Ltd.
, 155 Ill. 2d 329, 336, 614 N.E.2d 1205, 1209 (1993)(in determining whether an ambiguity exists in an insurance contract, the court should consider the subject matter of the contract, the facts surrounding its execution, the situation of the parties and the predominate purpose of the contract, which is to indemnify the insured). 

We therefore conclude that the words in the policy here are susceptible to more than one reasonable interpretation; thus, they are ambiguous and will be construed in favor of the insured.  The underlying suit does not arise from the discharge, dispersal, release or escape of a "pollutant."  As such, the pollution exclusion does not preclude coverage under the insurance policy.  Our decision is not based solely upon the "reasonable expectations" doctrine, but also on a reasonable interpretation of the plain, ordinary and popular meanings of the terms in the policy.

Accordingly, we conclude that the trial court erred in granting plaintiff's motion for summary judgment.  This case is reversed and remanded for further proceedings consistent with this decision.

Reversed and remanded.

CAMPBELL, P.J., and BUCKLEY, J., concur.