CONCLUSION

Upon our de novo review of the record, we find that the evidence presented was sufficient to warrant termination of Wayne's parental rights to Jaidyn and that termination is in Jaidyn's best interests. Therefore, we affirm.

AFFIRMED.

———————————

STATE FARM FIRE & CASUALTY COMPANY, APPELLEE, V.
JERRY DANTZLER, APPELLANT, AND DAVID CHUOL,
INDIVIDUALLY AND AS FATHER AND NEXT FRIEND
TO CHUOL GEIT, AND CHUOL GEIT, APPELLEES.

___ N.W.2d ___

Filed December 17, 2013.    No. A-12-1042.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Contracts: Appeal and Error.** The construction of a contract is a matter of law, and an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below.

4. **Insurance: Contracts.** A pollution exclusion is unambiguous when it bars coverage for injuries caused by all pollutants, not just traditional environmental pollution.

Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Reversed and remanded for further proceedings.

Michael A. Nelsen, of Marks, Clare & Richards, L.L.C., for appellant.

David J. Stubstad and Patrick S. Cooper, of Fraser Stryker, P.C., L.L.O., for appellee State Farm Fire & Casualty Company.

Moore, Pirtle, and Bishop, Judges.

Pirtle, Judge.

## INTRODUCTION

State Farm Fire & Casualty Company (State Farm) brought a declaratory judgment action to determine whether a rental dwelling insurance policy issued to Jerry Dantzler covered lead-based-paint claims made against him by his tenants David Chuol and Chuol Geit. The district court for Douglas County found that the policy excluded coverage of the claims against Dantzler based on a "pollution exclusion," and granted summary judgment in favor of State Farm. We conclude that there is a genuine issue of material fact as to whether there was a "discharge, dispersal, spill, release or escape" of the lead, as required for the policy's pollution exclusion to apply. Therefore, we reverse the judgment of the district court and remand the cause for further proceedings.

## BACKGROUND

Dantzler owns a rental property in Omaha, Nebraska. In September 2006, Chuol and his minor child, Geit, moved into the property. In March 2011, Chuol filed a lawsuit against Dantzler in his own behalf and on behalf of his son, alleging that Geit was "exposed to high levels of lead poisoning" in the rental property due to high levels of lead paint contamination on the walls and elsewhere in the rental property, causing him serious and permanent injury. In the lawsuit, Chuol asserted claims for negligence, breach of implied warranty of habitability, nuisance, intentional infliction of emotional distress, negligent infliction of emotional distress, and a violation of 42 U.S.C. § 4852(d) (2006). At the time the lawsuit was filed against Dantzler, he had a "Rental Dwelling Policy" of insurance with State Farm for the rental property. Dantzler tendered defense of the claims against him to State Farm pursuant to his policy.

State Farm filed the instant declaratory judgment action seeking a declaration that the insurance policy does not provide coverage for claims made against Dantzler arising out of exposure to lead-based paint. Dantzler filed an answer and

counterclaim seeking an order declaring that the policy at issue provides coverage for the claims against him which State Farm had wrongfully denied.

The rental dwelling policy of insurance issued to Dantzler by State Farm contains a "pollution exclusion," which excludes from coverage, in pertinent part: "**bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, spill, release or escape of pollutants . . . at or from premises owned, rented or occupied by the **named insured**." As used in the exclusion, the term "pollutants" is defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

Both Dantzler and State Farm filed motions for summary judgment. Dantzler alleged that there were no genuine issues of material fact in regard to whether the insurance policy provided coverage for the claims made against Dantzler because lead-based paint is not a "pollutant" under the policy. State Farm alleged that there were no genuine issues of material fact because the pollution exclusion precluded coverage of the claims asserted in the lawsuit against Dantzler.

The trial court found that the pollution exclusion was unambiguous and that lead is a pollutant within the meaning of the exclusion. It further found that Geit could have been exposed to the lead only if it was "'discharged, dispersed, released, or escaped'" from its location. Therefore, the trial court found that the pollution exclusion precluded coverage of the claims against Dantzler. The court granted summary judgment in favor of State Farm and denied Dantzler's motion for summary judgment.

## ASSIGNMENT OF ERROR

Dantzler assigns that the trial court erred in finding that the lead-based-paint claims made against him were excluded from coverage under State Farm's insurance policy.

## STANDARD OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence

show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Sutton v. Killham*, 285 Neb. 1, 825 N.W.2d 188 (2013). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id*.

[3] The construction of a contract is a matter of law, and an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below. *Model Interiors v. 2566 Leavenworth, LLC*, 19 Neb. App. 56, 809 N.W.2d 775 (2011).

## ANALYSIS

*Pollution Exclusion*.

The issue in this case is whether it can be decided as a matter of law that the pollution exclusion in State Farm's insurance policy excludes the lead-based-paint claims made against Dantzler from coverage. In determining this issue, we must first decide whether lead is a "pollutant" as defined in the policy. In making this determination, we are guided by the Nebraska Supreme Court's decision in *Cincinnati Ins. Co. v. Becker Warehouse, Inc.*, 262 Neb. 746, 635 N.W.2d 112 (2001), a case involving a pollution exclusion similar to the one at issue.

In *Cincinnati Ins. Co.*, Becker Warehouse, Inc., owned a building where food products owned by various entities were stored. While constructing an addition to the warehouse, the construction company hired by Becker Warehouse applied a sealant to the concrete floor. The owners of the food products filed lawsuits against Becker Warehouse, alleging that xylene fumes from the sealant contaminated their food products. Becker Warehouse sought indemnity and defense from its insurer, the Cincinnati Insurance Company (Cincinnati). Cincinnati filed a petition for declaratory judgment seeking a declaration that Becker Warehouse's insurance policy did not provide coverage for the alleged contamination because of a pollution exclusion

clause and that Cincinnati was not obligated to defend Becker Warehouse. Both parties filed motions for summary judgment, and the trial court sustained Cincinnati's motion and overruled Becker Warehouse's motion. The insurance policy issued to Becker Warehouse by Cincinnati contained a pollution exclusion nearly identical to the one at issue in the present case. The definition of "pollutants" in the Cincinnati policy included the same language as that found in the State Farm policy at issue, followed by an additional sentence which stated, "'Pollutants include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment.'" *Id*. at 749, 635 N.W.2d at 116.

On appeal, Becker Warehouse alleged that the pollution exclusion in the policy was ambiguous, arguing in part that the exclusion applied only to traditional environmental claims. The Nebraska Supreme Court recognized that state and federal courts are split on whether an insurance policy's absolute pollution exclusion bars coverage for all injuries caused by pollutants or whether it applies only to injuries caused by traditional environmental pollution. It noted, however, that a majority of state and federal jurisdictions have held that absolute pollution exclusions are unambiguous as a matter of law and, thus, exclude coverage for all claims alleging damage caused by pollutants. *Cincinnati Ins. Co. v. Becker Warehouse, Inc., supra*, citing *Nat'l Elect. Mfrs. v. Gulf Underwriters Ins.*, 162 F.3d 821 (4th Cir. 1998) (applying District of Columbia law); *Technical Coating v. U.S. Fidelity & Guaranty*, 157 F.3d 843 (11th Cir. 1998) (applying Florida law); *Certain Underwriters at Lloyd's v. C.A. Turner Const.*, 112 F.3d 184 (5th Cir. 1997) (applying Texas law); *American States Ins. Co. v. Nethery*, 79 F.3d 473 (5th Cir. 1996) (applying Mississippi law); *Brown v. American Motorists Ins. Co.*, 930 F. Supp. 207 (E.D. Pa. 1996); *City of Salina, Kan. v. Maryland Cas. Co.*, 856 F. Supp. 1467 (D. Kan. 1994); *Madison Const. v. Harleysville Mut. Ins.*, 557 Pa. 595, 735 A.2d 100 (1999); *Deni Associates v. State Farm Ins.*, 711 So. 2d 1135 (Fla. 1998); *Truitt Oil & Gas Co. v. Ranger Ins. Co.*, 231 Ga. App. 89, 498 S.E.2d 572 (1998); *City of Bremerton*

*v. Harbor Ins. Co.*, 92 Wash. App. 17, 963 P.2d 194 (1998); *TerraMatrix, Inc. v. U.S. Fire Ins. Co.*, 939 P.2d 483 (Colo. App. 1997).

The Supreme Court concluded as a matter of law that Cincinnati's pollution exclusion, though quite broad, was unambiguous. In response to Becker Warehouse's argument that the exclusion applied to only traditional environmental pollution claims, the court held as follows:

> The language of the policy does not specifically limit excluded claims to traditional environmental damage; nor does the pollution exclusion purport to limit materials that qualify as pollutants to those that cause traditional environmental damage. . . . An occurrence such as the release of xylene fumes in [Becker Warehouse's] warehouse clearly falls under Cincinnati's broad exclusion—to find otherwise would read meaning into the policy that is not plainly there. The language of an insurance policy should be read to avoid ambiguities, if possible, and the language should not be tortured to create them.

*Cincinnati Ins. Co. v. Becker Warehouse, Inc.*, 262 Neb. 746, 755-56, 635 N.W.2d 112, 120 (2001). The Nebraska Supreme Court further concluded:

> The broad nature of the pollution exclusion may cause a commercial client to question the value of portions of its commercial general liability policy, but, as an appellate court reviewing terms of an insurance contract, we cannot say that the language of the pollution exclusion is ambiguous in any way. The language in the instant pollution exclusion is clear and susceptible of only one possible interpretation.

*Id.* at 756-57, 635 N.W.2d at 120.

[4] Based on the holding in *Cincinnati Ins. Co.*, we conclude that the pollution exclusion at issue in this case is unambiguous in that it bars coverage for injuries caused by all pollutants, not just traditional environmental pollution. The *Cincinnati Ins. Co.* court concluded that Cincinnati's pollution exclusion, including the definition of "pollutant," was unambiguous. The pollution exclusion in Cincinnati's policy

is nearly identical to State Farm's policy, and the definition of "pollutant" in Cincinnati's policy includes the exact language found in State Farm's policy. While the definition of "pollutant" in Cincinnati's policy had additional language not found in State Farm's policy, that does not change the fact that the court in *Cincinnati Ins. Co.* found the entire definition of "pollutant" to be unambiguous. We conclude that even without the additional language found in the Cincinnati policy, State Farm's definition of "pollutant" is clear, is susceptible of only one possible interpretation, and, thus, is unambiguous.

*Lead as Pollutant.*

We determine, as the trial court did, that lead is a pollutant as defined in State Farm's policy. The policy defines "pollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." A chemical toxicologist testified by affidavit that lead exposure is known to have adverse effects on humans and that children are more vulnerable to lead poisoning than adults. He also testified that lead is defined as a pollutant by the Environmental Protection Agency, the Nebraska Department of Environmental Quality, the Occupational Safety and Health Administration, the Omaha Municipal Code, and various regulatory agencies. There was no evidence offered to refute the chemical toxicologist's testimony. We conclude as a matter of law that the definition of "pollutant" in State Farm's policy unambiguously encompasses lead found in paint.

*"Discharge, Dispersal, Spill, Release or Escape" of Pollutant.*

Next, we consider whether the exclusion's requirement of a "discharge, dispersal, spill, release or escape" of the pollutant is unambiguous as it relates to how the lead-based paint became available for ingestion and/or inhalation. Dantzler argues that this is where *Cincinnati Ins. Co. v. Becker Warehouse, Inc.*, 262 Neb. 746, 635 N.W.2d 112 (2001), can be distinguished from the present case. Dantzler contends that *Cincinnati Ins. Co.* involved a "'discharge'" of pollutants,

whereas in the present case, there is no evidence that there was a "'discharge, dispersal, spill, release, or escape of pollutants.'" Brief for appellant at 12.

The pollution exclusion at issue excludes from coverage bodily injury arising out of the actual, alleged, or threatened "discharge, dispersal, spill, release or escape" of pollutants. The pollution exclusion in *Cincinnati Ins. Co.* contained similar language.

*Cincinnati Ins. Co.* involved a sealant that was applied to the floor of an addition to a warehouse. Although the treated area was separated from the area where food was stored with layers of heavy plastic sheeting, xylene fumes from the sealant contaminated the food. The Supreme Court concluded that the only logical explanation for the alleged damage is that the xylene fumes "'discharged, dispersed, released or escaped'" from its intended location at the warehouse addition into the original part of the warehouse where food products were stored. 262 Neb. at 760, 635 N.W.2d at 122.

However, the application of the words "discharge, dispersal, spill, release or escape" with regard to lead-based paint on the walls of a home is not as clear as the xylene fumes in *Cincinnati Ins. Co.* The analytical framework in *Cincinnati Ins. Co.* provides guidance, but we must determine whether the clause is clear and unambiguous as applied to the particular facts of this case.

The question of whether exposure to lead-based paint constitutes a "discharge, dispersal, spill, release or escape" of pollutants is an issue of first impression in Nebraska. In looking to other jurisdictions, there is a split of authority on this issue. However, we find the analysis in *Danbury Ins. Co. v. Novella*, 45 Conn. Supp. 551, 727 A.2d 279 (Conn. Super. 1998), persuasive and applicable to the instant case.

In *Danbury Ins. Co.*, 45 Conn. Supp. at 561-62, 727 A.2d at 284, the Connecticut court stated:

> Under the terms of the policy, coverage is excluded only for damages resulting from the "actual, alleged or threatened discharge, dispersal, release or escape of pollutants." These terms limit the ways "by which the

pollutant must travel from a contained place to the injured person's surroundings and then cause injury." *Lefrak Organization, Inc. v. Chubb Custom Ins. Co.,* supra, 942 F.Supp. at 953. As applied to personal injuries alleged to have been caused by exposure to toxic levels of lead in lead-based paint, there is more than one reasonable interpretation of these terms. Although "it is arguable, and several courts have found, that the presence of lead dust or chips in an apartment qualifies as 'discharge,' 'dispersal,' or even more generally, as 'release,'"; *id.,* at 954; it is not necessarily clear that lead needs to be released into an apartment's environment for a child to be exposed. For example, a child may ingest lead by chewing on intact painted surfaces. As the *Sphere Drake* court observed: "These terms do not ordinarily encompass the type of 'movement' associated with lead paint poisoning." *Sphere Drake Ins. Co. v. Y.L. Realty Co.,* supra, 990 F.Supp. at 243. See *Generali-U.S. Branch v. Caribe Realty Corp.,* supra, 160 Misc.2d at 1062, 612 N.Y.S.2d 296 ("to the extent that Daniel Diaz suffered lead poisoning from eating paint chips, this court is not convinced that his injuries arise out of the discharge, disposal, seepage, migration, release or escape of a pollutant.") Cf. *Weaver v. Royal Ins. Co. of America*, 140 N.H. 780, 783, 674 A.2d 975 (1996) ("Whether the transporting of lead dust from the work site to the Weavers' car and home was the 'discharge, dispersal, release or escape' of a pollutant is not clear.") Since ambiguity exists regarding this aspect of the clause's application, Danbury cannot prevail on its motion for summary judgment.

Furthermore, Danbury has not come forward with supporting documentation; see Practice Book § 17-45; demonstrating the absence of a genuine issue of material fact regarding the method by which the minor plaintiff in the underlying action was exposed to toxic levels of lead to satisfy the court that the exposure would fall within the clause's limitations if the clause were not ambiguous. The underlying complaint in the present case alleges only that Kim, the minor plaintiff, was "exposed to dangerous,

hazardous and toxic levels of lead paint" on intact and nonintact surfaces and was thereby injured. This court cannot determine the mechanism of Kim's exposure to lead or whether her alleged lead poisoning resulted from ingesting or inhaling lead dust or lead chips, chewing on intact surfaces, a combination of these mechanisms or some other source of exposure.

See, also, *Lititz Mut. Ins. Co. v. Steely*, 567 Pa. 98, 108, 785 A.2d 975, 980-81 (2001), wherein the Pennsylvania Supreme Court found the terms "'discharge, dispersal, release or escape'" of pollutants to be ambiguous with reference to the process by which lead-based paint becomes available for ingestion or inhalation. The court observed that "the process by which lead-based paint becomes available for human ingestion/inhalation does not, in the usual case, occur quickly. Rather, the process of surface degradation occurs continually, but at a slow rate." *Id.* at 109, 785 A.2d at 981.

One would not ordinarily describe the continual, imperceptible, and inevitable deterioration of paint that has been applied to the interior surface of a residence as a discharge ("a flowing or issuing out"), a release ("the act or an instance of liberating or freeing"), or an escape ("an act or instance of escaping"). . . . Arguably such deterioration could be understood to constitute a "dispersal," the definition of which ("the process . . . of . . . spreading . . . from one place to another," . . .) may imply a gradualism not characteristic of the other terms. Any such inconsistency in meaning simply indicates, however, that the exclusionary language does not clearly include or exclude the physical process here at issue, but is, as to that process, ambiguous. Such ambiguity requires that the language be interpreted in favor of the insured.

*Id.* at 109-10, 785 A.2d at 982.

In the instant case, like *Danbury Ins. Co. v. Novella*, 45 Conn. Supp. 551, 727 A.2d 279 (Conn. Super. 1998), there is no evidence regarding the method by which the child in the underlying action was exposed to toxic levels of lead. The complaint against Dantzler alleges that Geit was "exposed to

high levels of lead poisoning" in the rental property due to high levels of lead-paint contamination on the walls and elsewhere in the rental property. It further states that the Douglas County Health Department "found and confirmed high levels of lead-paint contamination in the residence especially on [the] walls." The complaint does not allege whether Geit inhaled lead dust, ingested chipped flakes, or both. Further, the complaint does not allege that there was a "discharge, dispersal, spill, release or escape" of the lead. State Farm's complaint for declaratory judgment does not make such an allegation either.

The chemical toxicologist's affidavit states that children are exposed to lead by inhaling dust or dirt that is contaminated with lead, or by ingesting items contaminated with lead, such as paint chips. However, this is a general statement and not specific to the child in this case.

We cannot determine how Geit was exposed to the lead or whether his alleged lead poisoning resulted from ingesting or inhaling lead dust or lead chips, chewing on intact surfaces, a combination of these, or some other source of exposure. The record does not demonstrate that Geit's injuries resulted from a "discharge, dispersal, spill, release or escape" of lead. Accordingly, there is more than one reasonable interpretation of these terms. Since ambiguity exists regarding the application of this clause, there is a genuine issue of material fact as to whether there was a "discharge, dispersal, spill, release or escape" of the lead, as required for the pollution exclusion to exclude coverage of the claims against Dantzler. As such, summary judgment in favor of State Farm was not appropriate.

## CONCLUSION

Because we conclude that a genuine issue of fact exists in regard to the application of the pollution exclusion, the trial court erred in granting summary judgment in favor of State Farm. The judgment of the district court is reversed, and the cause is remanded for further proceedings.

Reversed and remanded for
further proceedings.