MOON KIM *et al.*, d/b/a Oriental Cleaning Company, Plaintiffs-Appellants, v. STATE FARM FIRE AND CASUALTY COMPANY *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—98—3741

Opinion filed March 24, 2000.

Schoenberg, Fisher, Newman & Rosenberg, Ltd., of Chicago (David A. Axelrod and Lauren A. Lundin, of counsel), for appellants.

Rooks, Pitts & Poust, of Chicago (Michael C. Borders and Ellen D. Holzman, of counsel), for appellees.

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff, Oriental Cleaning Company (the cleaning company), sought a declaratory judgment that an insurance policy issued to it by defendant State Farm Insurance Companies (State Farm) covered losses incurred when one of the cleaning company's dry cleaning machines released a chemical, tetrachloroethane (perc), into the environment. The circuit court granted State Farm's motion for judgment on the pleadings, finding there was no coverage under the policy. The cleaning company appeals.

On appeal, the cleaning company contends : (1) the circuit court erred in finding that the absolute pollution exclusions preclude cover-

age; and (2) the insurer breached its duty to defend and is estopped from raising the exclusions as defenses to coverage. We affirm.

The cleaning company leases property at 1730 West Fullerton Avenue, where it operates a dry cleaning and laundry store. One of the cleaning company's dry cleaning machines malfunctioned, releasing perc onto the floor and into the soil underneath the property. Later, the cleaning company was sued twice by the managing agent for the property's owner, Centrum Properties, Inc. (Centrum). The first lawsuit alleged the cleaning company had breached its lease by permitting perc to be released; the second lawsuit sought injunctive relief and damages, including the cost of removing the perc.

The cleaning company notified State Farm of the lawsuits and then settled the lawsuits, agreeing to take responsibility for 75% of the remediation costs. State Farm subsequently denied coverage for the settlement.

The cleaning company then filed a declaratory judgment action seeking a declaration that State Farm breached its duty to defend and indemnify. The circuit court granted judgment on the pleadings for State Farm, finding there was no coverage under the policy's pollution exclusions. The cleaning company appeals.

■ Our review of the circuit court's order granting State Farm's motion for judgment on the pleadings is *de novo. Chicago Title & Trust Co. v. Steinitz*, 288 Ill. App. 3d 926, 934 (1997). A motion for judgment on the pleadings is akin to a motion for summary judgment limited to the pleadings. *Employers Insurance v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 138 (1999). On review, we examine the pleadings to determine whether any genuine issue of material fact exists and, if not, whether the prevailing party was entitled to judgment as a matter of law. *Ehlco*, 186 Ill. 2d at 138; *Steinitz*, 288 Ill. App. 3d at 934. In determining whether judgment on the pleadings for State Farm is proper, we construe the insurance policy at issue. Our construction of the insurance policy is also *de novo. American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479-80 (1997).

First, the cleaning company argues for coverage under the policy's "Business Liability" section. Second, the cleaning company argues for coverage under the policy's "Property Damage Legal Liability" section. Third, the cleaning company argues that State Farm breached its duty to defend and is estopped from raising policy defenses.

I. The Business Liability Section

The Business Liability section states in relevant part:

> "We will pay those sums that the insured becomes legally obligated to pay as damages because of *** property damage ***."

The cleaning company contends that the discharge of the perc into the land beneath its dry cleaning and laundry store constituted covered "property damage." However, the Business Liability coverage grant is subject to the so-called "absolute pollution exclusion." The absolute pollution exclusion states that the insurance does not apply to any:

"a. property damage *** arising out of the actual, alleged or threatened discharge, seepage, migration, dispersal, spill, release or escape of pollutants:

* * *

b. loss, cost or expense arising out of any:

(1) request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of pollutants."

The policy defines "pollutants" as:

"[A]ny solid, liquid, gaseous or thermal *irritant or contaminant*, including smoke, vapor, soot, fumes, acids, alkalis, *chemicals* and waste. Waste includes materials to be recycled, reconditioned or reclaimed." (Emphasis added.)

Perc is a chemical and, as such, it falls within the absolute pollution exclusion's definition of a pollutant excluded from coverage.

However, the cleaning company argues that a recent Illinois Supreme Court case, *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473 (1997), compels a different result. In *Koloms*, the insured sought coverage for injuries caused by carbon monoxide fumes emitted from a building's faulty furnace. *Koloms*, 177 Ill. 2d at 476. The insurer argued that the carbon monoxide fumes were a pollutant and, thus, excluded from coverage under the absolute pollution exclusion in the policy. *Koloms*, 177 Ill. 2d at 476-77. The absolute pollution exclusion in *Koloms*, like the exclusion at issue here, stated it eliminated coverage for property damage arising out of " 'actual, alleged or threatened discharge, dispersal, release or escape of *** any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.' " *Koloms*, 177 Ill. 2d at 487.

The supreme court noted several recent opinions criticizing the absolute pollution exclusions's broad definition of a pollutant as an "irritant" or "contaminant." *Koloms*, 177 Ill. 2d at 484. The court cited the federal district court's opinion in *Westchester Fire Insurance Co. v. City of Pittsburgh*, 768 F. Supp. 1463, 1470 (D. Kan. 1991), *aff'd*, 987 F.2d 1516 (10th Cir. 1993), which criticized the exclusion's seemingly unlimited reach and noted that "there is virtually no substance or chemical in existence that would not irritate or damage some person or property." *Koloms*, 177 Ill. 2d at 484.

The supreme court also cited the Seventh Circuit Court of Appeals' decision in *Pipefitters Welfare Education Fund v. Westchester Fire Insurance Co.*, 976 F.2d 1037, 1043 (7th Cir. 1992). There, the appeals court noted:

> "Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope and lead to some absurd results. To take but two simple examples, reading the clause broadly would bar coverage for bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano, and for bodily injury caused by an allergic reaction to chlorine in a public pool. Although Drano and chlorine are both irritants or contaminants that cause, under certain conditions, bodily injury or property damage, one would not ordinarily characterize these events as pollution." *Pipefitters*, 976 F.2d at 1043.

The supreme court agreed with the federal courts' criticism of the exclusion and stated that it was "troubled" by the "overbreadth" in the language of the exclusion. *Koloms*, 177 Ill. 2d at 488. Then, it summarized the events leading to the insurance industry's adoption of the absolute pollution exclusion and concluded that the "predominate motivation" in drafting the exclusion was to avoid the expense and exposure resulting from environmental litigation. *Koloms*, 177 Ill. 2d at 489-92. To that end, the exclusion originally stated that it eliminated coverage for property damage " 'into or upon land, the atmosphere or any watercourse or body of water.' " *Koloms*, 177 Ill. 2d at 491. The requirement that the pollution be discharged " 'into or upon land, the atmosphere or any watercourse or body of water' " was later deleted, but the supreme court determined that the omission of the phrase only removed a "redundancy" in the language of the exclusion. *Koloms*, 177 Ill. 2d at 493-94, citing *West.American Insurance Co. v. Tufco Flooring East, Inc.*, 104 N.C. App. 312, 325, 409 S.E.2d 692, 700 (1991). Of importance, the supreme court noted that the exclusion continued to employ the words "discharge," "dispersal," "release," and "escape," which are terms of art used in environmental law to indicate the release of hazardous material into the environment. *Koloms*, 177 Ill. 2d at 493-94, citing *West American Insurance Co. v. Tufco Flooring East, Inc.*, 104 N.C. App. at 325, 409 S.E.2d at 700.

Finally, the supreme court held that "[g]iven the historical background of the absolute pollution exclusion and the drafters' continued use of environmental terms of art, we hold that the exclusion applies only to those injuries caused by traditional environmental pollution" (*Koloms*, 177 Ill. 2d at 494), *i.e.*, hazardous material discharged into the land, atmosphere, or any watercourse or body of water. The court held that the release of carbon monoxide inside a

commercial building did not constitute traditional environmental pollution. *Koloms*, 177 Ill. 2d at 494.

■ Here, the parties agree that perc is a chemical and a hazardous material. Here, the hazardous material was not confined within the cleaning company's building, unlike *Koloms*, but was discharged into the soil underneath its dry cleaning and laundry store. The cleaning company's discharge of a hazardous material into the soil meets the definition of traditional environmental pollution. Thus, the cleaning company's resulting injuries, specifically, the remediation costs, the removal and replacement of the dry cleaning equipment, the replacement of the store's floor and floor liner, and lost profits, are excluded from coverage under the absolute pollution exclusion.

The cleaning company argues that the absolute pollution exclusion is inapplicable here because this case does not involve the slow and gradual discharge of hazardous substances into the environment. In effect, the cleaning company is arguing that the absolute pollution exclusion is inapplicable where the pollution is "sudden and accidental." We disagree. As noted by *Koloms*, the 1986 amendment to the exclusion removed the exception for the "sudden and accidental" release of pollution. See *Koloms*, 177 Ill. 2d at 493.

The cleaning company argues that the absolute pollution exclusion does not apply because the perc was a legally used product intentionally brought to the dry cleaning store by the cleaning company. In support, the cleaning company cites *Insurance Co. v. Stringfield*, 292 Ill. App. 3d 471 (1997), and *West American Insurance Co. v. Tufco Flooring East, Inc.*, 104 N.C. App. 312, 409 S.E.2d 692 (1991).

In *Stringfield*, this court considered whether the absolute pollution exclusion precluded coverage for injuries arising out of a minor's ingestion of lead paint and plaster chips inside his family's apartment. *Stringfield*, 292 Ill. App. 3d at 472. The court noted that the lead did not pollute the paint; rather, it was purposefully incorporated into the paint from the start, and the paint was intentionally applied to the premises and was legal. *Stringfield*, 292 Ill. App. 3d at 476. The court held that "[a] common understanding of a pollutant is a substance that 'pollutes' or renders impure a previously unpolluted object, as when chemical wastes leach into a clean water supply" (*Stringfield*, 292 Ill. App. 3d at 476), and, thus, the absolute pollution exclusion did not apply to preclude coverage for personal injuries arising out of a minor's ingestion of lead. *Stringfield*, 292 Ill. App. 3d at 476.

In *Tufco*, the insured performed floor resurfacing in a Perdue chicken processing facility. *Tufco*, 104 N.C. App. at 314, 409 S.E.2d at 693. Perdue subsequently brought a claim against the insured, alleging that during the floor resurfacing work, styrene fumes or vapors

were released from the flooring material, contaminating chicken products being stored by Perdue in an adjacent cooler. *Tufco*, 104 N.C. App. at 314, 409 S.E.2d at 693. On appeal, the court considered whether the absolute pollution exclusion precluded coverage for Perdue's claims against the insured. The court noted that the insured did not bring the vapors or fumes into the Perdue processing facility. *Tufco*, 104 N.C. App. at 322, 409 S.E.2d at 698. Rather, the insured brought an unadulterated, pure raw material into the facility that was used for the normal business activity of resurfacing floors. *Tufco*, 104 N.C. App. at 322, 409 S.E.2d at 698.

The *Tufco* court held that the absolute pollution exclusion refers to unwanted waste material, not "raw material brought upon the premises by the insured for the purpose of normal business activity which accidentally resulted in property damage" (*Tufco*, 104 N.C. App. at 322, 409 S.E.2d at 698), that the insured was in the business of installing industrial flooring, that it purchased its commercial liability policy to protect it from liability from the very type of activity at issue, and that its work was no secret to the insurance company. *Tufco*, 104 N.C. App. at 317, 409 S.E.2d at 697. The *Tufco* court held that to allow the insurer to deny coverage for claims arising out of the insured's central business activity would render the policy useless to the insured, and, thus, the absolute pollution exclusion did not apply to bar coverage. *Tufco*, 104 N.C. App. at 318, 409 S.E.2d at 697-98.

Here, the cleaning company argues that the perc was legally and intentionally placed in the dry cleaning machine as part of the cleaning company's normal business activity and was not a waste product. Further, the cleaning company argues that it purchased its commercial liability policy to protect it from liability from the very type of activity at issue here. Therefore, the cleaning company argues that, like *Stringfield* and *Tufco*, the absolute pollution exclusion does not apply to bar coverage.

We disagree. *Stringfield* and *Tufco* were decided prior to the supreme court opinion in *Koloms*. As discussed, *Koloms* held that the absolute pollution exclusion applied to bar coverage for injuries caused by "traditional environmental pollution," that is, hazardous material discharged into the land, atmosphere, or any watercourse or body of water. *Koloms*, 177 Ill. 2d at 488-94. Here, the perc was hazardous material discharged into the land underneath the dry cleaning and laundry store. Therefore, the absolute pollution exclusion applies to bar coverage, regardless of whether the perc was a waste product or whether it was legally and intentionally placed in the dry cleaning machine as part of the cleaning company's normal business activity. The absolute pollution exclusion, as construed by the supreme court

in *Koloms*, also applies regardless of whether the cleaning company thought the policy would protect it from the type of activity at issue here.

The cleaning company next argues that the *cause* of the perc's release is "critical" to determining whether the claim is excluded under the absolute pollution exclusion. The cleaning company contends that since the release of the perc was caused by a faulty dry cleaning machine, the absolute pollution exclusion does not apply to bar coverage. In support, the cleaning company cites *Economy Preferred Insurance Co. v. Grandadam*, 275 Ill. App. 3d 866 (1995). In *Grandadam*, the insured sought coverage for damage and injuries caused when the insured's minor son spilled a container of mercury in a neighbor's home. *Grandadam*, 275 Ill. App. 3d at 868. The parties agreed that the mercury was a pollutant (*Grandadam*, 275 Ill. App. 3d at 868), and the appellate court held that the absolute pollution exclusion applied to preclude coverage (*Grandadam*, 275 Ill. App. 3d at 869-72). The court also stated that it "might view this case differently if mercury was released from a broken household thermostat or thermometer. It is possible that in such a situation mercury would not be considered a pollutant." *Grandadam*, 275 Ill. App. 3d at 873.

The cleaning company argues that the above-quoted language in *Grandadam* means that damage from a faulty machine does not constitute a pollutant under the absolute pollution exclusion. However, under *Koloms*, the dispositive determination is whether the release of the perc constituted traditional environmental pollution. Since the release of the perc did constitute such traditional environmental pollution, the absolute pollution exclusion applies to bar coverage, regardless of the cause of the perc's release.

II. The Property Damage Legal Liability Section

The cleaning company next argues for coverage under the Property Damage Legal Liability section of the policy. That section states:

> "[W]e will *** pay those sums that the insured becomes legally obligated to pay as damages *** because of property damage to premises (including permanently attached fixtures) rented to or occupied by you."

The cleaning company correctly points out that the Property Damage Legal Liability section is not subject to the absolute pollution exclusion contained in the Business Liability section. However, an examination of the policy reveals that the Property Damage Legal Liability section is unambiguously subject to a separate absolute pollution exclusion. The exclusion states:

> "We do not insure for loss either consisting of, or directly and immediately caused by, one or more of the following:

* * *

the presence, release, discharge or dispersal of pollutants, meaning any solid, liquid, gaseous or thermal irritant or contaminant, including vapor, soot, fumes, acids, alkalis, chemicals and waste *** "

Perc is a pollutant within the meaning of the exclusion and, as such, the exclusion applies to preclude coverage. See our discussion, *supra*.

III. Estoppel

■ Finally, the cleaning company argues that State Farm's failure to defend under a reservation of rights or seek a declaratory judgment estops it from raising the policy exclusions as a defense. To determine an insurer's duty to defend, the court compares the allegations of the underlying complaint to the policy language. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 125 (1992). If the allegations fall potentially within the policy's coverage, the insurer has a duty to defend the insured against the underlying complaint. *Outboard*, 154 Ill. 2d at 125. The failure to defend the suit or seek a declaratory judgment as to coverage estops the insurer from raising any policy defenses should its decision regarding coverage turn out to be wrong. *State Farm Fire & Casualty Co. v. Martin*, 186 Ill. 2d 367, 371 (1999).

Here, the underlying complaint filed by Centrum sought damages and injunctive relief for the release of the chemical perc into the environment. However, the policy expressly excludes coverage for property damage caused by or arising out of the release of chemicals. Further, the policy language, as construed by our supreme court in *Koloms*, precludes coverage for the type of traditional environmental pollution alleged in Centrum's complaint. Thus, State Farm did not breach its duty to defend, as a comparison of the allegations in the underlying complaint to the policy language reveals that no potential for coverage existed under the terms of the policy. Therefore, State Farm is not estopped from raising the exclusions as a coverage defense and the circuit court did not err in granting judgment on the pleadings for State Farm.

For the foregoing reasons, we affirm the circuit court.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.