# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Country Mutual Insurance Co. v. Hilltop View, LLC*, 2013 IL App (4th) 130124

---

| | |
|---|---|
| Appellate Court Caption | COUNTRY MUTUAL INSURANCE COMPANY, Plaintiff-Appellant, v. HILLTOP VIEW, LLC, an Illinois Corporation; PROFESSIONAL SWINE MANAGEMENT, LLC, an Illinois Corporation; DONALD WARD; DIANNE WARD; JAMES VAUGHN; MARJEAN VAUGHN; JOE HEATON; PAM HEATON; BILLY JOE TROUTMAN; JULIE TROUTMAN; GARY L. HAND; PAULETTE L. HAND; JAMES A. HOPKINS; KAREN S. HOPKINS; DONALD L. BROWN; AND GAYLEEN J. BROWN, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-13-0124 |
| Filed | November 13, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute over plaintiff insurer's obligation to defend its insureds in the underlying nuisance and negligence action predicated on the odors associated with the insureds' confinement hog farm, the trial court properly denied the insurer's motion for partial summary judgment and properly granted the insureds' motions for partial summary judgment to the extent that the umbrella policy's pollution exclusion did not apply to the claims, but the portion of the trial court's order requiring the insurer to defend its insureds was reversed on the ground that other coverage defenses remained pending. |
| Decision Under Review | Appeal from the Circuit Court of Schuyler County, No. 09-MR-7; the Hon. Alesia A. McMillen, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded for further proceedings. |

Counsel on
Appeal

Keith G. Carlson, of Carlson Law Offices, of Chicago, and Kent R. Schnack, of Law Office of Kent R. Schnack, P.C., of Quincy, and William P. Pipal, of Troutman Sanders LLP, of Chicago, and Charles I. Hadden (argued), of Troutman Sanders LLP, of Washington, D.C., for appellant.

Edward W. Dwyer, Jennifer M. Martin (argued), and Joshua J. Houser, all of Hodge, Dwyer & Driver, and Richard J. Wilderson, of Graham & Graham, Ltd., both of Springfield, for appellees Hilltop View, LLC, and Professional Swine Management, LLC.

Charles F. Speer and Britt Bieri, both of Speer Law Firm, P.A., of Kansas City, Missouri, and Ralph D. Davis, of Ralph Davis Law, of Peoria, for other appellees.

Panel

JUSTICE POPE delivered the judgment of the court, with opinion.

Justices Appleton and Holder White concurred in the judgment and opinion.

**OPINION**

¶ 1    On October 26, 2012, the trial court denied plaintiff Country Mutual Insurance Company's (Country) motion for partial summary judgment, finding the pollution exclusion clause in Country's farm umbrella policy (umbrella policy) was ambiguous. On the same day, the court entered an order granting defendants Hilltop View, LLC's (Hilltop) and Professional Swine Management, LLC's (PSM) respective cross-motions for partial summary judgment to the extent Country is responsible for defending Hilltop and PSM (the insureds) in the underlying lawsuit (Schuyler County case No. 08-L-02) filed against them by 14 neighbors of Hilltop's confinement hog farm. Pursuant to the court's Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) finding, Country appeals, arguing the court erred in (1) denying its motion for summary judgment, which relied on the umbrella policy's pollution exclusion clause; and (2) granting the insureds' respective cross-motions for partial summary judgment to the extent Country is responsible for defending the insureds against the neighbors' lawsuit because Country alleged additional, and still unresolved, defenses to coverage under the umbrella policy. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

¶ 2

¶ 3　　On May 9, 2008, the neighbors filed their initial complaint against Hilltop and PSM. The neighbors have since amended their complaint on more than one occasion. The neighbors' nuisance and negligence claims against Hilltop, PSM, and Steven L. and Linda J. Foglesong are predicated on alleged odors associated with the operation of the confinement hog farm and the land application of manure from the confinement hog farm on property owned by the Foglesongs.

¶ 4　　On May 21, 2008, Hilltop delivered a notice of claim and a copy of the neighbors' complaint to Country. Since then, Hilltop has provided copies of all subsequent pleadings to Country, from which it had purchased several insurance policies prior to the neighbors' lawsuit against them, including an "AgriPlus" policy, an umbrella policy, and a pollution liability policy (pollution policy).

¶ 5　　On June 13, 2008, Hilltop received notice Country was denying coverage under the "AgriPlus" policy. After receiving no formal response from Country with regard to any of its other policies, Hilltop retained counsel to respond to the neighbors' complaint. On June 19, 2008, Hilltop received a reservation of rights letter from Country addressing coverage under the pollution policy. The letter stated:

"It is Country's understanding that you have engaged and directed [private counsel] to prepare a motion to dismiss the above captioned matter. You have the right to hire, at your own expense, a personal attorney to review the defense being provided to you. However, Country has the right to control the defense of this matter. I did not assign this matter to [private counsel], nor did I authorize [private counsel] to do any work. Therefore, Country will not pay for the charges associated with the preparation of the motion to dismiss. In addition, you are directed not to have anyone file any pleadings nor take any action in this matter without Country's consent. Your cooperation in this matter is a condition precedent to coverage."

¶ 6　　On August 14, 2008, the insureds and Country met to discuss the neighbors' lawsuit. Country advised the insureds it would make a determination of coverage under the pollution policy based on the amended complaint to be filed by the neighbors.

¶ 7　　On August 28, 2008, Country filed its initial complaint for declaratory judgment against Hilltop, PSM, and the neighbors, alleging it had no duty pursuant to its pollution policy to defend or indemnify the insureds against the neighbors' lawsuit. However, in a letter dated September 9, 2008, Country agreed to provide a defense to the insureds pursuant to the pollution policy, subject to a reservation of rights.

¶ 8　　Country provided Hilltop and PSM with a defense under the pollution policy until February 4, 2011. At that time, Country had filed its third amended complaint for declaratory judgment, which sought to rescind the pollution policy based on alleged misrepresentations during the policy application process. In a letter to Hilltop and PSM's privately retained counsel, Country stated it would "no longer advance any defense costs pursuant to any reservation of rights, but instead will be pursuing its rights and remedies as encouraged by Illinois law in the declaratory judgment action."

¶ 9        On August 31, 2011, the insureds asked Country to provide a defense to the neighbors' complaint pursuant to the umbrella policy. On September 26, 2011, Country sent the insureds notice it was denying coverage under the umbrella policy based on the policy's pollution exclusion. According to the letter written by counsel for Country:

> "This responds to your letter to me of August 31, 2011[,] and our subsequent discussions, all on behalf of our respective clients concerning coverage for the underlying litigation under the policies that Country Mutual issued to Hilltop. I, and therefore my client, Country Mutual, was under the impression that we previously had addressed the umbrella policy and that neither Hilltop nor Professional Swine currently was asserting claims under any umbrella policy."

Country stated it would not provide a defense under the umbrella policy and would seek leave to amend its complaint for declaratory judgment to address the absence of coverage under the umbrella policy.

¶ 10       On November 7, 2011, Country filed its fourth amended complaint for declaratory judgment, which contained eight counts addressing coverage defenses to the umbrella policy. One of the eight counts addressed the pollution exclusion and the remaining seven counts asserted other defenses to coverage under the umbrella policy.

¶ 11       On February 2, 2012, Hilltop and PSM filed answers to Country's fourth amended complaint, denying that coverage under the umbrella policy was precluded by the defenses asserted by Country. That same day, Hilltop and PSM each asked for leave to file a third amended counterclaim for declaratory judgment against Country.

¶ 12       On March 2, 2012, Country filed its motion for partial summary judgment, arguing the pollution exclusion bars coverage under the umbrella policy. On March 28, 2012, Hilltop and PSM filed their respective third amended counterclaims.

¶ 13       On April 5, 2012, Hilltop and PSM filed a joint response to Country's motion for partial summary judgment. In their response, Hilltop and PSM argued the pollution exclusion did not bar coverage in this situation. Hilltop and PSM also stated "[t]he only question presented in Country Mutual's Motion [for partial summary judgment] is whether the pollution exclusion in the Umbrella Policy bars coverage and a defense for the Insureds in the Underlying Litigation."

¶ 14       On April 5, 2012, Hilltop and PSM filed their own cross-motions for partial summary judgment, arguing Country was obligated to provide each of them a defense in the underlying lawsuit. The primary focus of each motion was the inapplicability of the "pollution-exclusion clause" of the umbrella policy. However, Hilltop and PSM also both briefly argued Country was estopped from asserting policy defenses under the umbrella policy because it breached that policy by refusing to defend them in the underlying action brought by the neighbors.

¶ 15       On June 12, 2012, Country filed a reply in further support of its motion for partial summary judgment that the pollution exclusion bars coverage under the umbrella policy. The same day, Country also filed a response to Hilltop's cross-motion for summary judgment, incorporating all the arguments it made in its own motion for partial summary judgment and its reply in further support of its motion for partial summary judgment. Country argued it was not estopped from asserting policy defenses to coverage under the umbrella policy. On June

13, 2012, Country filed a similar response with regard to PSM's cross-motion for partial summary judgment. On July 16, 2012, Hilltop and PSM filed a joint reply to Country's responses to their cross-motions for partial summary judgment.

¶ 16 The trial court held a hearing on the summary judgment motions and cross-motions on July 26, 2012. On October 26, 2012, the court entered an order denying Country's motion for partial summary judgment and a separate order granting the insureds' cross-motions for partial summary judgment "to the extent that [Country] is responsible for [the insureds'] defense" pursuant to the same authority and reasons it denied Country's motion for partial summary judgment.

¶ 17 On November 26, 2012, Country filed a motion to vacate and reconsider judgment pursuant to section 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203 (West 2010)). Country argued the trial court erred in denying its partial motion for summary judgment. In the alternative, Country argued the court should vacate its order granting Hilltop's and PSM's cross-motions for partial summary judgment because Country's complaint for declaratory judgment raised many coverage defenses the parties had not briefed and the court did not address. According to the motion:

"That Defendants defeated one of several coverage defenses raised in Country's Complaint does not mean that Country has a duty to defend because Country may prevail on its other claims that remain unresolved at this point. Whether Country ultimately will be found to owe a duty to defend to the Defendants is still an open question, and Defendants are not entitled to partial summary judgment, regardless of what the Court decides with respect to the pollution exclusion."

On December 18, 2012, Hilltop and PSM filed a joint response in opposition to Country's motion to vacate and reconsider judgment.

¶ 18 On January 10, 2013, the trial court heard arguments on Country's motion, which it denied the same day. On January 29, 2013, pursuant to Supreme Court Rule 304(a), the court found no just reason to delay enforcement or appeal of the court's October 26, 2012, orders denying Country's motion for partial summary judgment and granting defendant's cross-motions for partial summary judgment to the extent Country must defend Hilltop and PSM in the underlying case brought by the neighbors.

¶ 19 This appeal followed.

¶ 20                                        II. ANALYSIS
¶ 21                                   A. Summary Judgment
¶ 22 Summary judgment is a drastic remedy and may only be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). In ruling on a motion for summary judgment, the trial court must construe the pleadings, depositions, and affidavits in the light most favorable to the nonmoving party. *Quincy Mall, Inc. v. Kerasotes Showplace Theatres, LLC*, 388 Ill. App. 3d 820, 824, 903 N.E.2d 887, 890 (2009).

¶ 23    In ruling on a motion for summary judgment, courts must remember the party moving for summary judgment is the burdened party for purposes of the motion and must meet both the initial burden of production (see *North American Insurance Co. v. Kemper National Insurance Co.*, 325 Ill. App. 3d 477, 482, 758 N.E.2d 856, 860 (2001)) and the ultimate burden of proof. See *Pecora v. County of Cook*, 323 Ill. App. 3d 917, 933, 752 N.E.2d 532, 545 (2001); *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 689, 737 N.E.2d 662, 668 (2000); see also Barbara A. McDonald, *The Top 10 Ways to Avoid Losing a Motion for Summary Judgment*, 92 Ill. B.J. 128, 128-29 (2004). In this case, Country bore the initial burden of production and the ultimate burden of proof with regard to its motion for partial summary judgment. However, Hilltop and PSM bore the initial burden of production and the ultimate burden of proof with regard to their cross-motions for partial summary judgment.

¶ 24    Only after a movant produces evidence that, if uncontradicted, would entitle it to a directed verdict at trial does the burden of production shift to the party opposing the motion for summary judgment. At that point, the party may not simply rely on its pleadings to raise an issue of material fact. *Larson v. Decatur Memorial Hospital*, 236 Ill. App. 3d 796, 801, 602 N.E.2d 864, 868 (1992). We review a summary judgment ruling *de novo*. *Id.*

¶ 25                    B. Insurance Policy Rules of Construction

¶ 26    The issues in this case concern the construction of Country's farm umbrella policy. As a general matter, the construction of an insurance contract is a matter to be determined by the court as a question of law and is subject to *de novo* review. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479-80, 687 N.E.2d 72, 75 (1997). Where a policy provision is clear and unambiguous, its words must be given their plain, ordinary, and popular meaning. *Koloms*, 177 Ill. 2d at 479, 687 N.E.2d at 75. However, if the terms of a policy are ambiguous, the language will be strictly construed against the insurer that drafted the policy. *Koloms*, 177 Ill. 2d at 479, 687 N.E.2d at 75. "In addition, provisions that limit or exclude coverage will be interpreted liberally in favor of the insured and against the insurer." *Koloms*, 177 Ill. 2d at 479, 687 N.E.2d at 75.

¶ 27                    C. Umbrella Policy's Pollution Exclusion Clause

¶ 28    Country argues the trial court erred in finding the umbrella policy's pollution exclusion clause did not apply to the neighbors' nuisance and negligence claims based on the odors coming from the operation of the confinement hog farm and the application of hog manure to the surrounding fields. This is the primary issue on appeal. The pollution exclusion states the umbrella policy does not apply

> "M. to personal injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release, or escape of pollutants:
>
>                              * * *
>
> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fume, acids, alkalis, chemicals, and waste materials. Waste materials include materials which are intended to be or have been recycled,

reconditioned, or reclaimed."

¶ 29　In *Koloms*, our supreme court examined the scope of the absolute pollution exclusion provision contained in a commercial liability (CGL) policy. The court found the dispositive issue to be "whether that exclusion bars coverage for claims of carbon monoxide poisoning caused by an allegedly defective furnace." *Koloms*, 177 Ill. 2d at 476, 687 N.E.2d at 73. The case involved a furnace in a two-story commercial building that began to emit carbon dioxide and other noxious fumes. *Koloms*, 177 Ill. 2d at 476, 687 N.E.2d at 74. Employees of one of the building's tenants became ill and sued the beneficial owners of the building, alleging the owners had negligently maintained the furnace, had failed to keep the furnace in good working condition, and had not properly inspected some repair work done on the furnace. *Koloms*, 177 Ill. 2d at 476, 687 N.E.2d at 74. The owners tendered the complaint to their insurance company. *Koloms*, 177 Ill. 2d at 476, 687 N.E.2d at 74. The insurance company agreed to defend the owners subject to a reservation of rights, reserving the right to contest coverage pursuant to the pollution exclusion. *Koloms*, 177 Ill. 2d at 476, 687 N.E.2d at 74. The clause at issue in *Koloms* is nearly identical to the clause at issue in the case *sub judice*, stating:

> " 'This insurance does not apply to:
>
> * * *
>
> f.(1) "Bodily injury" or "property damage" arising out of actual, alleged or threatened discharge, dispersal, release or escape of pollutants:
>
> (a) At or from premises you own, rent or occupy ***.' " *Koloms*, 177 Ill. 2d at 476-77, 687 N.E.2d at 74.

According to the exclusion, "pollutants" were " 'any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.' " *Koloms*, 177 Ill. 2d at 477, 687 N.E.2d at 74.

¶ 30　Shortly thereafter, the insurance company filed a declaratory judgment action, arguing it did not have a duty to defend or indemnify the owners for injuries caused by the emission of the carbon monoxide. *Koloms*, 177 Ill. 2d at 477, 687 N.E.2d at 74. According to the company, the term "pollutants" was unambiguous, and under the plain language of the policy, the "emission of carbon monoxide fumes constituted the 'release' of a gaseous 'irritant or contaminant.' " *Koloms*, 177 Ill. 2d at 477, 687 N.E.2d at 74.

¶ 31　The owners denied the material allegations of the declaratory judgment action and filed an affirmative defense, arguing the pollution exclusion did not apply because it "was limited to injuries resulting from industrial, commercial or large scale pollution." *Koloms*, 177 Ill. 2d at 477, 687 N.E.2d at 74. The owners did not argue the pollution exclusion was facially ambiguous. *Koloms*, 177 Ill. 2d at 483, 687 N.E.2d at 77. However, regardless of the clause's facial clarity, the owners argued "the exclusion [did] not apply to 'damages due to routine commercial hazards such as a faulty heating and ventilation system.' " *Koloms*, 177 Ill. 2d at 483, 687 N.E.2d at 77. The owners also argued "an insured person in their position would not reasonably expect carbon monoxide, a commonly occurring chemical compound, to be considered a pollutant." *Koloms*, 177 Ill. 2d at 477, 687 N.E.2d at 74.

¶ 32　Our supreme court noted both the owners and the insurance company presented

compelling reasons supporting their respective positions and recognized the "vast divergence of the jurisprudence from courts across the country which have already struggled with the question" before the court. *Koloms*, 177 Ill. 2d at 485, 687 N.E.2d at 78. The court observed:

"The source of the disagreement within the jurisprudence seems to lie in the fact that the language of the clause is *** 'quite specific' on its face, and yet a literal interpretation of that language results in an application of the clause which is 'quite broad.' We note that when the definition of the term 'pollutant' is inserted into the body of the exclusion, the clause eliminates coverage for ' "[b]odily injury" or "property damage" arising out of actual, alleged or threatened discharge, dispersal, release or escape of *** any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.' A close examination of this language reveals that the exclusion (i) identifies the types of injury-producing materials which constitute a pollutant, *i.e.*, smoke, vapor, soot, *etc.*, (ii) sets forth the physical or elemental states in which the materials may be said to exist, *i.e.*, solid, liquid, gaseous or thermal, and (iii) specifies the various means by which the materials can be disseminated, *i.e.*, discharge, dispersal, release or escape. To that extent, therefore, the exclusion is indeed 'quite specific,' and those courts wishing to focus exclusively on the bare language of the exclusion will have no difficulty in concluding that it is also unambiguous. See, *e.g.*, *Reliance Insurance Co. v. Moessner*, [121] F.3d [895] *** (3d Cir. August 5, 1997).

Not all courts, however, find the bare language of the exclusion dispositive. A number of courts, while acknowledging the lack of any facial ambiguity, have nevertheless questioned whether the breadth of the language renders application of the exclusion uncertain, if not absurd. *** These courts, troubled by the results which obtain when the terms of the clause are applied in the context of an actual claim, often decline to apply the pollution exclusion to injuries other than those caused by traditional environmental contamination." *Koloms*, 177 Ill. 2d at 487-88, 687 N.E.2d at 78-79.

Our supreme court noted it believed "a purely literal interpretation of the disputed language, without regard to the facts alleged in the underlying complaints, fails to adequately resolve the issue presented to this court." *Koloms*, 177 Ill. 2d at 488, 687 N.E.2d at 79. In addition, the court stated:

"Like many courts, we are troubled by what we perceive to be an overbreadth in the language of the exclusion *as well as* the manifestation of an ambiguity which results when the exclusion is applied to cases which have nothing to do with 'pollution' in the conventional, or ordinary, sense of the word. [(Emphasis added.)] [Citation.] Accordingly, we agree with those courts which have restricted the exclusion's otherwise potentially limitless application to only those hazards traditionally associated with environmental pollution. We find support for our decision in the drafting history of the exclusion, which reveals an intent on the part of the insurance industry to so limit the clause.

* * *

Our review of the history of the pollution exclusion amply demonstrates that the

predominate [*sic*] motivation in drafting an exclusion for pollution-related injuries was the avoidance of the 'enormous expense and exposure resulting from the "explosion" of *environmental* litigation.' (Emphasis added.) [Citation.] Similarly, the 1986 amendment to the exclusion was wrought, not to broaden the provision's scope beyond its original purpose of excluding coverage for environmental pollution, but rather to remove the 'sudden and accidental' exception to coverage which, as noted above, resulted in a costly onslaught of litigation. We would be remiss, therefore, if we were to simply look to the bare words of the exclusion, ignore its *raison d' être*, and apply it to situations which do not remotely resemble traditional environmental contamination. The pollution exclusion has been, and should continue to be, the appropriate means of avoiding ' "the yawning extent of potential liability arising from the gradual or repeated discharge of hazardous substances *into the environment*." ' (Emphasis in original.) [Citation.] We think it improper to extend the exclusion beyond that arena." *Koloms*, 177 Ill. 2d at 488-93, 687 N.E.2d at 79-81.

The supreme court held the pollution exclusion only applies to those injuries caused by "traditional environmental pollution." *Koloms*, 177 Ill. 2d at 494, 687 N.E.2d at 82. As a result, we must determine whether the neighbors' odor claims concern "traditional environmental pollution."

¶ 33   Country points out our supreme court did not define what constitutes "traditional environmental pollution" and cites three cases as establishing what constitutes "traditional environmental pollution." See *Kim v. State Farm Fire & Casualty Co.*, 312 Ill. App. 3d 770, 774-75, 728 N.E.2d 530, 533-34 (2000); *Connecticut Specialty Insurance Co. v. Loop Paper Recycling, Inc.*, 356 Ill. App. 3d 67, 81-82, 824 N.E.2d 1125, 1137-38 (2005); *Village of Crestwood v. Ironshore Specialty Insurance Co.*, 2013 IL App (1st) 120112, ¶¶ 16-18, 986 N.E.2d 678. In *Kim*, the appellate court defined "traditional environmental pollution" as "hazardous material discharged into the land, atmosphere, or any watercourse or body of water." *Kim*, 312 Ill. App. 3d at 774, 728 N.E.2d at 534. We find this definition somewhat misleading because many materials can be hazardous to a body of water but beneficial to the land. As a result, the fact a material is hazardous in certain situations does not always justify a label it constitutes a "hazardous material." Manure is one such material.

¶ 34   Country argues the odors at issue in this case constitute traditional environmental pollution under this definition. We disagree. This case is easily distinguishable from *Kim*, *Loop Paper*, and *Village of Crestwood*, all of which involved nonnaturally occurring chemicals. In *Kim*, the parties agreed the chemical at issue which leaked into the ground, tetrachloroethane (perc), was a hazardous material. *Kim*, 312 Ill. App. 3d at 775, 728 N.E.2d at 534.

¶ 35   In *Loop Paper*, the plaintiffs in the underlying case claimed they were exposed to highly toxic and hazardous pollution in the form of smoke from a fire at defendant's recycling facility. *Loop Paper*, 356 Ill. App. 3d at 69, 824 N.E.2d at 1127-28. According to the complaint in the underlying action, the " 'cardboard commonly utilized and obtained for recycling contains additives, adhesives, bonding material, and/or other fixatives as well as vinyl chloride, urea, melamine, phenol formaldehyde, urethanes, and acrylics and other substances and on information and belief, the cardboard present at the Defendant, Loop

-9-

Paper [Recycling's] facility did contain such materials.' " *Loop Paper*, 356 Ill. App. 3d at 69, 824 N.E.2d at 1128.

¶ 36    In *Village of Crestwood*, the underlying claim alleged the Village of Crestwood and its former long-standing mayor had routinely and knowingly mixed polluted water into the municipal tap water supply to save money for the municipality. *Village of Crestwood*, 2013 IL App (1st) 120112, ¶ 1, 986 N.E.2d 678. According to the underlying complaint, the Village knowingly supplied water to its residents from a groundwater well which was contaminated with perchloroethylene, or PCE, a solvent used in the dry cleaning industry, "and other chemicals that occur when PCE breaks down over time." *Village of Crestwood*, 2013 IL App (1st) 120112, ¶ 5, 986 N.E.2d 678.

¶ 37    According to Country, the crux of the neighbors' claims is the odors from (1) the insured's hog confinement farm and (2) the application of the hog manure to surrounding fields are hazardous and the substantial foul and obnoxious odors have caused them to suffer loss of enjoyment of their property and harmed their way of life as it existed before the swine factory began operation. However, based on the allegations in the neighbors' complaint, we do not find the hogs, their manure, nor the smells associated with these things constitute traditional environmental pollution. At the hearing on Country's motion to vacate judgment and for reconsideration, the neighbors' attorney stated:

"I'd like to make it clear about what the plaintiffs in the underlying case are claiming. We have made no claim that anybody's been hurt. We've made no claim that they're facing the risk of injury. There's no claim to health, and there's no claim to injury. It is a very pure claim. And that claim is interference with the enjoyment of property. And I'll just simply refer to the complaint, and it's made very clear there."

¶ 38    Based on the allegations in the neighbors' complaint, the confinement hog operation in question appears larger than traditional hog farms. However, the neighbors do not appear to be claiming the insureds are polluting the environment in the traditional sense of the word.

¶ 39    Hog farms have been around for a long time, and neighbors of hog farms have dealt with the smells created by hog farms ever since. These farms have been traditionally thought of as a source of food, not pollution. This is not to say a hog farm, especially a confinement hog farm, could never pollute. For example, if a hog farmer dumped hog manure into a creek instead of spreading it on his fields, it might be difficult not to categorize the contamination of the creek as a form of traditional environmental pollution. However, we are not faced with that sort of situation in this case.

¶ 40    Country argues characterizing the neighbors' odor claims as "traditional environmental pollution" is consistent with the Illinois Environmental Protection Act's (Act) treatment of odors as "air pollution." We disagree. The Act does not classify all odors as "air pollution." Instead, the Act defines "air pollution" as "the presence in the atmosphere of one or more contaminants *in sufficient quantities and of such characteristics and duration* as to be injurious to human, plant, or animal life, to health, or to property, or to unreasonably interfere with the enjoyment of life or property." (Emphasis added.) 415 ILCS 5/3.115 (West 2010). The Act defines "contaminant" as "any solid, liquid, or gaseous matter, any odor, or any form of energy, from whatever source." 415 ILCS 5/3.165 (West 2010).

¶ 41     Even if the odors at issue in this case constituted air pollution for purposes of the Act, this does not mean the odors constitute "traditional environmental pollution." The statute in question reflects the policy of the General Assembly as to what now constitutes pollution. The fact an odor may now constitute pollution pursuant to statute does not mean it also constitutes "traditional environmental pollution." Generally speaking, the scope of the things seen as hazardous to the environment, as reflected in environmental protection laws today, is far greater than what we conclude our supreme court had in mind when it spoke of "traditional environmental pollution."

¶ 42     Country also argues the Livestock Management Facilities Act (Facilities Act) supports its argument swine waste odors are "traditional environmental pollution." We disagree. Country cites section 20(f) of the Facilities Act (510 ILCS 77/20(f) (West 2010)), which states in part: "The application of livestock waste to the land is an acceptable, recommended, and established practice in Illinois. However, when livestock waste is not applied in a responsible manner, it *may create* pollutional problems." (Emphasis added.) 510 ILCS 77/20(f) (West 2010). If anything, this section of the Facilities Act shows the spreading of manure on farm fields is a traditional agricultural practice and would not constitute "traditional environmental pollution."

¶ 43                          D. Country's Other Coverage Defenses

¶ 44     Country next argues the trial court erred in granting Hilltop's and PSM's cross-motions for partial summary judgment to the extent Country owes a duty to defend Hilltop and PSM because seven of the coverage defenses Country asserted in the declaratory judgment action have not been resolved. We agree.

¶ 45     In their respective cross-motions for partial summary judgment, Hilltop and PSM argued they are entitled to judgment as a matter of law on count III of their respective third amended counterclaims for declaratory relief because Country has an obligation to provide them a defense against the neighbors' claims pursuant to the terms and conditions of the umbrella policy. Hilltop and PSM both requested the trial court to

"enter summary judgment and declare that Country Mutual has breached the Umbrella Policy by failing to provide a defense to [Hilltop and PSM] in the Underlying Action *** [and] find that [Hilltop and PSM are] entitled to damages, including reimbursement of all defense costs incurred in the Underlying Action, and that Country Mutual is estopped from raising defenses to coverage under the Umbrella Policy."

¶ 46     According to the trial court's October 26, 2012, written order, the court granted Hilltop's and PSM's cross-motions for partial summary judgment "to the extent that [Country Mutual] is responsible for [Hilltop's and PSM's] defense based on the same citations and for the same reasons as stated in the Order for Plaintiff's Motion for Summary Judgment entered on the same date."

¶ 47     On appeal, Hilltop and PSM do not argue Country was estopped from raising the unresolved policy defenses to coverage under the umbrella policy. Instead, without citing any authority for the proposition, Hilltop and PSM argue "the Circuit Court's orders were valid and within its discretion in view of Country's strategy to unreasonably delay the litigation

of its other 'coverage defenses.' " We disagree.

¶ 48    Summary judgment is a drastic remedy and may only be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). A trial court does not have discretion to award summary judgment if the moving party is not entitled to summary judgment as a matter of law. *Larson*, 236 Ill. App. 3d at 801, 602 N.E.2d at 868.

¶ 49    The party moving for summary judgment is the burdened party for purposes of the motion and must meet both the initial burden of production (see *North American Insurance Co.*, 325 Ill. App. 3d at 482, 758 N.E.2d at 860) and the ultimate burden of proof. See *Pecora*, 323 Ill. App. 3d at 933, 752 N.E.2d at 545; *Williams*, 316 Ill. App. 3d at 689, 737 N.E.2d at 668; see also Barbara A. McDonald, *The Top 10 Ways to Avoid Losing a Motion for Summary Judgment*, 92 Ill. B.J. 128, 128-29 (2004). Here, Hilltop and PSM bore the initial burden of production and the ultimate burden of proof with regard to their cross-motions for partial summary judgment. However, Hilltop and PSM have ignored that burden.

¶ 50    Before Hilltop and PSM could succeed on a motion for summary judgment requiring Country to defend them in the underlying litigation, they had to establish all of Country's coverage defenses were not valid as a matter of law. The trial court only found the pollution exclusion clause in the umbrella policy did not apply to this claim as a matter of law.

¶ 51    While the trial court correctly granted partial summary judgment to Hilltop and PSM to the extent the umbrella policy's pollution exclusion clause did not apply to the neighbors' claims, the trial court erred in prematurely finding Country responsible for Hilltop and PSM's defense because Country still has other potential coverage defenses. We recognize the court's concern with serial motions for summary judgment and the resulting delay therefrom. However, where, as here, the parties proceeded on motions for partial summary judgment based only on the pollution exclusion clause of the umbrella policy and the court made a Rule 304(a) finding by agreement of the parties, we are deciding only that issue. The court can control future filings of any motions for summary judgment through its case management orders.

¶ 52    The Third District Appellate Court recently noted:

"It is well settled that an insurer may either seek a declaratory judgment *or* defend the suit against its insured under a reservation of rights." (Emphasis in original.) *Grinnell Mutual Reinsurance Co. v. Hubbs*, 2013 IL App (3d) 110861, ¶ 12, 988 N.E.2d 761.

As a result, Country can choose to continue its declaratory judgment action instead of defending Hilltop and PSM under a reservation of rights.

¶ 53                              III. CONCLUSION

¶ 54    For the reasons stated, we affirm the trial court's denial of Country's motion for partial summary judgment. We affirm in part the court's order granting Hilltop's and PSM's respective cross-motions for partial summary judgment to the extent the umbrella policy's pollution exclusion clause does not apply to the neighbors' claims in the underlying

litigation, but we reverse the portion of the court's order requiring Country to defend Hilltop and PSM because Country raised other coverage defenses in its declaratory judgment action still pending before the court.

¶ 55     Affirmed in part and reversed in part; cause remanded for further proceedings.