2016 IL App (4th) 150550
NO. 4-15-0550

**FILED**
April 12, 2016
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| ILLINOIS MUNICIPAL LEAGUE RISK MANAGEMENT ASSOCIATION, | ) ) | Appeal from Circuit Court of |
| Plaintiff-Appellee, | ) | Sangamon County |
| v. | ) | No. 14MR421 |
| The CITY OF GENOA, an Illinois Municipality, | ) | |
| Defendant-Appellant. | ) ) ) ) | Honorable John M. Madonia, Judge Presiding. |

---

JUSTICE POPE delivered the judgment of the court, with opinion.
Justices Harris and Appleton concurred in the judgment and opinion.

**OPINION**

¶ 1        On May 1, 2014, the Illinois Municipal League Risk Management Association (Association) filed a complaint for declaratory judgment against the City of Genoa (City) and the Regional Transportation Authority (RTA), seeking a declaration it had no duty to defend or indemnify the City in a lawsuit brought against it by RTA. On February 2, 2015, the Association filed a motion seeking judgment on the pleadings. On June 8, 2015, the trial court heard arguments on the motion. The court granted the Association's motion for judgment on the pleadings, finding the Association had no duty to defend or indemnify the City in the underlying suit. The City appeals, arguing the court erred in granting the Association's motion for judgment on the pleadings. We reverse and remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3        In the underlying case, RTA alleged its claim against the City arose from a "tax kickback scheme" between the City and Boncosky Oil Company, Inc., and later its successor, PetroLiance LLC (Company).  The City, which was outside RTA's taxing district, agreed to give the Company part of the sales tax revenue the City received from sales generated by the Company in exchange for the Company moving its sales office to the City.  RTA alleged these sales were actually occurring in RTA's taxing district, not the City.  Because the Company claimed the City as the site of sale, RTA did not receive tax revenue from an additional tax required on sales occurring within RTA's taxing district.  According to RTA, "[t]his scheme deprives *** RTA of its portion of sales tax revenues necessary to fund its continued operations."

¶ 4        RTA's complaint alleged the Company opened a small sales office in the City, which began operations on or about June 1, 2006.  Although the Company described this office as "the primary and exclusive point of sale" for the Company, RTA alleged this was "a fiction." According to RTA's complaint, the "sales office" in the City "had little, if any, decision making authority and did not conduct the 'business of selling.' "  RTA alleged the City "received an unjustified windfall in sales tax revenue without incurring the expense of providing municipal services" to the Company.

¶ 5        RTA's complaint contained two counts.  The first count asked for statutory remedies pursuant to section 8-11-21(a) of the Illinois Municipal Code (Municipal Code) (65 ILCS 5/8-11-21(a) (West 2012)).  The complaint alleged the Company entered into the economic development agreement (EDA) in question after this statute went into effect on June 1, 2004. According to RTA's complaint:

"By reason thereof, [RTA] has and is suffering loss and [the City] is liable to [RTA] for damages in the amount of the tax revenue it was denied as a result of the said EDA, statutory interest, costs, reasonable attorney's fees, and an amount equal to fifty percent of the lost tax consistent with 65 ILCS 5/8-11-21."

The second count of the underlying complaint, which named the City and the Company, asked for damages and equitable relief pursuant to our supreme court's decision in *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, 998 N.E.2d 1227. In this count, RTA alleged the Company's activities in the City did not constitute the business of selling by a retailer pursuant to *Hartney* and rules promulgated by the Illinois Department of Revenue. Regardless, the Company claimed the City as the situs of its sales.

¶ 6    On May 1, 2014, the Association filed its complaint for declaratory judgment, seeking a declaration it owed no duty to defend or indemnify the City against RTA's complaint in the underlying case. On February 3, 2015, the Association filed a motion for judgment on the pleadings.

¶ 7    In June 2015, the trial court held a hearing on the Association's motion. The parties agreed Form RMA 4 of the insurance policy was at issue. The Association conceded RTA was suing the City for a wrongful act. However, it argued the underlying complaint did not fall within the policy's definition of a "loss." The Association argued fines and penalties imposed by law are not a "loss" under the policy. Further, according to the Association, RTA was trying to disgorge ill-gotten gains from the City. The Association argued ill-gotten gains or stolen goods are uninsurable under Illinois law. The Association stated the City could not have

- 3 -

suffered a "loss" in this case because a "loss is the loss of something which you had a right to possess to begin with."

¶ 8        The City argued the underlying case has nothing to do with disgorgement or restitution because the City never received any of the money to which RTA claims it is entitled. According to the City, RTA's complaint in the underlying case does not allege the City had money to which RTA was entitled. The City argued:

> "If you read the whole complaint, if you read the whole complaint and you read the allegations in the light most favorable to us, it explains that [RTA's] tax is one percent. It explains that— again, it attaches the RTA Act, so you can read the RTA Act attached to your complaint. You know what tax [RTA] is supposed to get. You know what tax the municipality is supposed to get, and it's pretty clear that they're two different taxes here. They're two separate taxes.
>
> What the complaint asks for is it asks to be compensated for the lost revenue, sure it asks for that, but that's damages. That's compensatory, not restitution, because we don't have what is [RTA's]. We either have our own, if we prevail in the underlying suit, we have our own tax money or it's some other municipality's. We don't have and we never would get [RTA's] tax money."

In response, the Association pointed to paragraph 38 of the underlying complaint, which alleged: "[The City] received an unjustified windfall in sales tax revenue without incurring the expense of providing municipal services to [the Company]."

- 4 -

¶ 9　　　　　　After arguments were made, the trial court ruled the underlying complaint did not allege a "loss" as defined by the insurance policy in question based on the Association's "disgorgement" argument.  As a result, the court granted the Association's motion for judgment on the pleadings.  Further, the court stated—even assuming, *arguendo*, the complaint alleged a "loss"— exclusion 12 of the policy would exclude coverage based on the allegations in the underlying complaint.  That provision excluded coverage with regard to "the issuance, collection or management of proceeds or repayment of taxes by any Members or any agent acting on behalf of such Members."

¶ 10　　　　　　This appeal followed.

¶ 11　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 12　　　　　　In Illinois, the obligation for an insurance company to defend its insured is broader than its obligation to indemnify its insured.  *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23, 52, 514 N.E.2d 150, 163 (1987).  Our supreme court has stated:

> "The duty to indemnify arises only when the insured becomes
> legally obligated to pay damages in the underlying action that
> gives rise to a claim under the policy.  The duty to defend an action
> brought against the insured, on the other hand, is determined solely
> by reference to the allegations of the complaint.  If the complaint
> alleges facts which bring the claim within the potential indemnity
> coverage of the policy, the insurer is obligated to defend the action.
> [Citations.]  Thus, the insurer must defend an action even though it
> may not ultimately be obligated to indemnify the insured."
> (Emphasis omitted.)  *Id.*

Our supreme court has also noted with approval the concept that "[t]he question of coverage should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action. [Citation.]" (Internal quotation marks omitted.) *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 460, 930 N.E.2d 1011, 1019 (2010) (quoting *American Economy Insurance Co. v. Holabird & Root*, 382 Ill. App. 3d 1017, 1022, 886 N.E.2d 1166, 1171 (2008)).

¶ 13          If even one theory in the complaint falls within the coverage provided by an insurance policy, the insurer has a duty to defend its insured. *Pekin Insurance Co. v. Precision Dose, Inc.*, 2012 IL App (2d) 110195, ¶¶ 30-31, 968 N.E.2d 664. "[T]he threshold that an underlying complaint must satisfy to present a claim of potential coverage is low, and for coverage to exist, the complaint need only present a possibility of recovery, not a probability of one." *American Zurich Insurance Co. v. Wilcox & Christopoulos, L.L.C.*, 2013 IL App (1st) 120402, ¶ 28, 984 N.E.2d 86.

¶ 14          This requires courts to interpret the insurance policy at issue. This court has stated the construction of an insurance contract is a question of law and subject to *de novo* review. *Country Mutual Insurance Co. v. Hilltop View, LLC*, 2013 IL App (4th) 130124, ¶ 26, 998 N.E.2d 950. Clear and unambiguous policy provisions must be given their plain and popular meaning. *Id.* However, ambiguous provisions in a policy will be strictly construed against the insurer. *Id.* " 'In addition, provisions that limit or exclude coverage will be interpreted liberally in favor of the insured and against the insurer.' " *Id.* (quoting *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479, 687 N.E.2d 72, 75 (1997)).

¶ 15          The trial court in this case granted the Association's motion, finding the underlying complaint did not allege a "loss" as defined by the policy because RTA was trying to disgorge money from the City. The City argues the underlying claim potentially falls within the

coverage provided by its policy with the Association, and the trial court erred in granting the Association's motion for judgment on the pleadings.

¶ 16    The Association argues the trial court correctly granted its motion for judgment on the pleadings because the underlying complaint against the City does not allege a "loss" as defined by the policy, considering the remedy RTA sought is uninsurable under Illinois law. According to the Association, RTA's complaint alleged the City and the Company's agreement violated section 8-11-21 of the Municipal Code (65 ILCS 5/8-11-21 (West 2012)). The Association characterizes RTA's complaint as alleging the City was not entitled to collect any sales tax revenue from the Company's sales and any sales tax revenue the City collected belongs to RTA. According to the Association, Illinois law does not allow a party to insure itself for loss of property it has no right to possess.

¶ 17    We disagree with both the trial court's and the Association's characterization of RTA's complaint and find no merit in the Association's disgorgement and restitution argument. While RTA's complaint alleges the City "received an unjustified windfall in sales tax revenue," RTA does not allege it has any right to the sales tax revenue the City actually received from the Company's sales. Instead, RTA wants to be compensated for (1) sales tax revenue it claims should have been included on the Company's sales but was never collected and (2) statutory damages pursuant to section 8-11-21 of the Municipal Code (*id.*).

¶ 18    Counts I and II of RTA's complaint sought compensation from the City for additional taxes RTA claimed should have been collected on the Company's sales but were not. These additional taxes would have benefitted RTA. Count I sought this and additional money pursuant to section 8-11-21 of the Municipal Code (*id.*), and count II asked for the revenue on equitable grounds.

¶ 19         Count I specifically alleged the City "is liable for damages in the amount of the tax revenue *it was denied* [(emphasis added)] as a result of the said EDA, statutory interest, costs, reasonable attorney's fees, and an amount equal to fifty percent of the lost tax consistent with 65 ILCS 5/8-11-21."  Count II alleged the Company's actions in the City did "not constitute the business of selling by the retailer pursuant to *Hartney*, 2013 IL 115130, 998 N.E.2d 1227 *** and the Rules" and the company misreported its tax situs as the City.  Among other things, RTA asked the trial court to:

> "(f)      enter judgment in favor of [RTA] and against
>
> defendants for sales taxes lost to [RTA] from the Retailers' sales
>
> from such date as the Court deems proper;
>
> (g)      award plaintiff its costs of suit; and
>
> (h)      grant such other and further relief as the Court
>
> deems proper."

¶ 20         Neither of these counts sought restitution or disgorgement of the sales tax money the City received as a result of the Company's decision to claim the City as the situs of its sales. Instead, both of RTA's counts sought tax revenue no one ever collected.  RTA does not claim it has any right to the sales tax revenue that was actually collected.  In short, RTA is not seeking restitution from the City or trying to disgorge money from the City that belongs to RTA.  As a result, the Association's reliance on *Local 705 v. Five Star Managers, L.L.C.*, 316 Ill. App. 3d 391, 735 N.E.2d 679 (2000), *Level 3 Communications, Inc. v. Federal Insurance Co.*, 272 F.3d 908 (7th Cir. 2001), and *Ryerson Inc. v. Federal Insurance Co.*, 676 F.3d 610 (7th Cir. 2012), is misplaced.

¶ 21    An argument could be made that the statutory penalties called for by section 8-11-21 of the Municipal Code (65 ILCS 5/8-11-21 (West 2012)) constitute a fine or penalty imposed by law and, therefore, any damages awarded to RTA pursuant to that statute would not constitute a "loss" because of how the policy defines "loss."  However, the parties do not argue this point, and we need not decide that issue to rule on this case.

¶ 22    As we stated earlier, if even one theory in the complaint falls within the coverage provided by an insurance policy, the insurer has a duty to defend its insured.  *Precision Dose, Inc.*, 2012 IL App (2d) 110195, ¶¶ 30-31, 968 N.E.2d 664.  "[T]he threshold that an underlying complaint must satisfy to present a claim of potential coverage is low, and for coverage to exist, the complaint need only present a possibility of recovery, not a probability of one."  *Wilcox & Christopoulos, L.L.C.*, 2013 IL App (1st) 120402, ¶ 28, 984 N.E.2d 86.

¶ 23    RTA's complaint in the underlying case contained two counts.  The second count asked for damages under an equitable, not a statutory, theory of relief.  As stated earlier, RTA was seeking to be compensated by the City for sales tax proceeds it claims it should have received but were never collected by the Company.  The City would suffer a "loss" under the terms of the policy if RTA prevailed on count II of its complaint against the City, considering the City would have to pay money to RTA that the City never received.

¶ 24    However, this does not end our analysis.  In granting the Association's motion for judgment on the pleadings, the trial court ruled, even if RTA's underlying complaint alleged a "loss" as defined by the policy, the type of loss alleged was specifically excluded by the insurance policy.  The court cited the following exclusion:

> "The following additional exclusions apply only to coverages
>
> provided by this form.  The Association shall not be liable to make

payments for 'loss' in connection with any claim made against the Members based upon or arising out of the following:

\* \* \*

(12)  the issuance, collection or management of proceeds or repayment of taxes by any Members or any agent acting on behalf of such Members."

¶ 25    We find this exclusion does not apply in this case.  RTA did not allege the City issued, collected, or managed the tax proceeds at issue.  In fact, RTA's complaint alleges the revenue to which it is entitled was never collected because the Company improperly claimed the City as the situs of its sales.  Further, because the City did not receive any tax revenue which should have gone to RTA, RTA is not seeking repayment of any taxes from the City.  Instead, RTA is asking the City to make RTA whole for taxes that were never collected by the Company. As a result, the trial court erred in granting the Association's motion for judgment on the pleadings.

¶ 26                              III. CONCLUSION

¶ 27    For the reasons stated, we reverse the trial court's order granting the Association's motion for judgment on the pleadings and remand for further proceedings.

¶ 28    Reversed and remanded.